RUBEN RIOS, Plaintiff-Appellant, v. NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION, Defendant-Appellee.

First District (5th Division)  No. 1—89—1002

Opinion filed June 22, 1990.

Leonard M. Ring & Associates, P.C., of Chicago (Leonard M. Ring and William J. Jovan, of counsel), for appellant.

Arnstein & Lehr, of Chicago (Louis A. Lehr, Jr., Arthur L. Klein, and Sally Y. Mengo, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Ruben Rios (Rios), appeals from a jury verdict and final judgment in favor of defendant, Navistar International Transportation Corporation (Navistar), formerly International Harvester. We affirm.

On January 17, 1979, Rios filed a strict liability action against defendant seeking damages for injuries he sustained on June 28, 1978, while operating a Series 2400B tractor that had been manufactured by Navistar and sold to his employer, Trees Unlimited. Rios claimed that the tractor was unreasonably dangerous and unsafe due to various design defects. A jury trial commenced on April 12, 1988, and the jury returned a verdict in favor of defendant. Judgment was entered on the verdict, and it is from this judgment that Rios now appeals, raising four issues: (1) whether it was error to have admitted into evidence videotapes of experiments performed by defendant, (2) whether the trial court improperly instructed the jury using two non-pattern (non-IPI) jury instructions, (3) whether it was error to have admitted into evidence reconstruction testimony through defendant's

expert witness, and (4) whether the trial court improperly struck from plaintiff's case the claim that defendant's tractor was defective because the step in the exit way was not slip resistant. Before we address these issues, we shall review the pertinent facts of the case and the evidence presented at trial material to the issues raised on appeal.

On June 28, 1978, Rios was an employee of Trees Unlimited, a landscaping company. On this date, under the supervision of the foreman, George Hoy, Rios assisted with the planting of trees at a residential development in Lincolnshire, Illinois. At approximately 6 p.m. Hoy and his crew finished preparing a hole for the last tree to be planted that day. Rios was then sent to obtain a tree from the storage area, which was located a few blocks from the planting site. To accomplish this, Rios operated the Series 2400B International Harvester tractor, which had recently been purchased by Trees Unlimited and which had a bucket attachment on the front that was used to transport trees to the planting site.

It should be noted that the Series 2400B tractor used by Rios was a small tractor which was designed for industrial applications such as landscaping. The transmission was designed with a separate forward/reverse lever on the front instrument panel, a notched gear lever with four gear options (one through four), and a speed range lever with three options (low, neutral or high). The speed range lever was located in a panel on the left side of the driver seat. Typically, to place the lever in "low" the operator would pull up on the lever while depressing the clutch and to place the lever in "high" the operator would push down on the lever while depressing the clutch. Midway between low and high was the neutral position, and when the lever was in neutral, the lever extended approximately three inches into the exit way of the tractor, which was 11¾ inches wide at the bottom and 18 inches wide at the top.

Rios testified at trial through an interpreter, indicating that he climbed onto the tractor, started it and then noticed an oil leak. He kept the engine running and in first gear, but placed the range lever in neutral. He then attempted to get off the tractor to check the oil leak. As he exited the tractor, he inadvertently struck the range lever with his left side, causing it to move out of neutral position. Rios then fell from the tractor, which moved forward and rolled over his left leg and hip. Rios could remember little about the positioning of the tractor's levers and attachments at the time of the accident, and on cross-examination he was impeached with his deposition testimony, in which he had indicated that he noticed the oil leak before he got onto the tractor.

Although Rios was the only person on the scene at the time of the accident, Hoy, who had been with the rest of the crew at the planting site, heard Rios' screams and immediately ran to that area. Hoy later testified that when he arrived at the scene Rios was pinned under the tractor and the bucket of the tractor was stuck in the trunk of a parked car. The tractor was in first gear, and the range lever was in the "high" position. Hoy then got onto the tractor and drove it off of Rios. An ambulance was called, and Rios was taken to the hospital. On cross-examination Hoy testified that he asked Rios about the accident when he visited him in the hospital and that Rios indicated that he caught his shirttail on the range lever as he was getting off the tractor and this is what caused the lever to be moved.

Although there was some evidence presented to show that the Series 2400B tractor was unreasonably unsafe because it had no handholds and because the step up to the tractor was not slip resistant, the main thrust of the case was that the tractor's range lever mechanism was defective because of its location, because it extended into the entranceway of the tractor, and because the range lever mechanism had no external "detent," a device that would insure that the lever could not be accidentally knocked into gear without depressing the clutch.

Rios' initial witness was Richard Hennesey, who had been the chief design engineer for the Series 2400 tractors. Hennesey admitted that tests he had performed showed that it was possible to cause Series 2400 tractors to move into the "low" range without depressing the clutch when the transmission was in first or second gear. However, he also testified that he did not believe that it would be possible to force the range lever into "high" without first depressing the clutch if the transmission was running in first or second gear.

Rios then presented two experts. The first expert, who was not an engineer but had a degree in safety and experience as an accident investigator, opined that the tractor was unreasonably dangerous because the range lever was not guarded by its location and because it lacked an external detent mechanism which would lock the range lever into the neutral position to keep it from being inadvertently moved into gear. However, on cross-examination this expert admitted that when he inspected the tractor, he never actually attempted to force the range lever into high range with the motor running and without depressing the clutch. The second expert, an aeronautical engineer, testified that the tractor was unreasonably unsafe because the range lever extended into an area that was already too narrow and because it did not conform to various standards promulgated by the

Society of Automotive Engineers (SAE) and the American Society of Agricultural Engineers (ASAE). This expert explained that the steering wheel was 16 inches in diameter and that the operator of the tractor would have to "worm" his body past the steering wheel and the range lever to exit the vehicle. Due to these conditions, he felt that there was a duty to insure that the range lever could not be forced into gear without depressing the clutch.

Although plaintiff's experts based their conclusions upon the assumption that it had been shown that it was possible to force the range lever into "high" when the motor was running and without depressing the clutch, the only evidence to this effect came from George Hoy, Rios' foreman at Trees Unlimited. Hoy testified that approximately four weeks after the accident, using the same tractor that Rios had used, he attempted to force the tractor into gear without engaging the clutch. He testified that during "several hundred attempts" he was able, on one or two occasions, to cause the tractor to move into gear without depressing the clutch. However, on cross-examination, Hoy was unable to specify the exact conditions when he was able to force the tractor into gear. That is, he testified that he had used "all combinations" of the range lever and gear positions and he was unable to remember how the levers were positioned when he had been able to force the tractor to move into gear without depressing the clutch.

The defense, on the other hand, presented Lance Hendrickson, an engineer employed by Navistar, who testified that the Series 2400B tractor had been designed in accordance with standards promulgated by the SAE and that the placement of the range lever to the left side of the operator was the optimum location for operator comfort and ease of use. Furthermore, Hendrickson explained that the range lever had an internal "spring and ball" detent mechanism rather than an external detent device, which would have been slower and less safe for the operator. Additionally, Hendrickson testified that the very nature of the "sliding gear" transmission found on the Series 2400B tractor was a form of detent as well.

Defendant was then allowed to present videotapes, over plaintiff's objection, showing tests that had been performed on the tractor used by Rios (termed the Rios tractor). Plaintiff's objection stemmed from the fact that the tests were performed nine years after the accident, using the Rios tractor, which had been purchased by Navistar and repaired prior to the testing. These tests showed several unsuccessful attempts to force the range lever into "high" with the engine running in first or second gear.

Additionally, defendant presented the testimony of Dr. Edward Caulfield, who was qualified as a reconstruction expert due to his educational background in theoretical applied mechanics and biomechanics. Initially, Dr. Caulfield testified regarding his expertise in gear research and design. He expressed his opinion that the gear design on the Rios tractor was not unreasonably unsafe, explaining that the tests that had been performed under his supervision (those seen earlier in the videotapes) showed that the range lever could not be "inadvertently activated," as was being presented by plaintiff. He conceded that, when forcing the lever down, some contact of the gears occurred and the friction caused some movement. But he noted that the videotapes illustrated that the movement ceased when the force was removed. Caulfield also indicated that, when forcing the lever as shown in the test, there would have been insufficient momentum for the tractor to have continued to move if it had encountered any resistance such as the obstacle of a body.

Finally, Dr. Caulfield testified that, based upon his review of the physical evidence and the medical evidence concerning the location of Rios' injuries, "coupled with the mechanical fact *** that it is virtually impossible to engage the machine into high gear," the accident could not have occurred as Rios had testified. He then hypothesized that when the accident occurred Rios had, in fact, been standing on the ground next to the tractor. He surmised that Rios had noticed the oil leak as he had approached the tractor and, deciding to check the leak, placed his right leg into the tractor to depress the clutch as he leaned into the tractor to turn the key to start the engine. As Rios removed his right foot from the clutch, the transmission, which had been left in gear, engaged and moved forward. This scenario, he testified, was consistent with plaintiff's injuries.

After argument and instruction, the jury returned a verdict for defendant, and plaintiff appeals from the judgment entered upon the verdict.

The first contention of prejudicial error is the trial court's admission of defendant's videotape evidence of experiments which were conducted at the direction of their expert, Dr. Caulfield. The objection here, as at trial, is that the tests were performed more than nine years after the Rios accident, under conditions that did not approximate the conditions at the time of the accident and using the Rios tractor, which had been repaired and reconditioned.

■ ■ Whether evidence of experiments made or tests performed should be admissible at trial depends upon whether the "essential conditions" or "essential elements" of the experiment are substantially

similar to those existing at the time of the accident. (*Hubbard v. McDonough Power Equipment, Inc.* (1980), 83 Ill. App. 3d 272, 404 N.E.2d 311; *Tarshes v. Lake Shore Harley Davidson* (1988), 171 Ill. App. 3d 143, 524 N.E.2d 1136.) What constitutes the "essential elements" or the "essential conditions" varies and must be decided on a case-by-case basis. Surely, if a test is represented to be a reenactment of the occurrence at issue, it would be necessary to show that the test was performed under conditions that duplicate, as closely as possible, the conditions at the time of the occurrence. But if an experiment is intended to test only one aspect or principle directly related to the cause or result of the accident, the "essential conditions" need not involve an exact duplication of the accident conditions. (*Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139, 144, 437 N.E.2d 376.) Whether the experiment evidence meets the criteria for admission is a determination left to the sound discretion of the trial judge, whose decision will not be overturned absent a clear abuse of discretion. *Kent v. Knox Motor Service, Inc.* (1981), 95 Ill. App. 3d 223, 225, 419 N.E.2d 1253.

In the present case plaintiff's theory was that defendant's tractor was defective, namely, that the design of the transmission made it likely that an operator of the tractor would inadvertently strike or hit against the range lever and that this condition was unreasonably dangerous because, by merely administering a certain amount of force to the range lever, the transmission could engage without requiring the use of the clutch mechanism. Defendant's experiments were designed to test this theory by determining whether an exertion of force to the range lever could overcome the need for the clutch mechanism. Since the testimony of plaintiff's witnesses established that the tractor, at the time of the accident, had been at "idle speed" (first or second gear) with the bucket attachment in "float" (up off the ground) and the range lever in neutral, when Rios inadvertently rubbed against or fell against the range lever, allegedly causing it to move into gear, these were the "essential conditions" which should have been, and were, duplicated by defendant.

The fact that the experiments took place nine years after the accident, using the Rios tractor which had been "reconditioned," were circumstances to be considered when deciding whether the evidence should have been admitted. However, since defendant's witness established that the repairs they made to the tractor involved only the clutch and that the transmission, when disassembled and inspected, was in the same condition as when it was manufactured and since plaintiff was alleging a design flaw, it would appear that the gap in

time and the repairs were irrelevant. Consequently, after considering the limited purpose of the tests, *i.e.*, to test the plausibility of plaintiff's theory of causation, and the manner in which they were performed, we find no abuse of discretion in the trial court's decision to admit this evidence.

What is more, even if we were to have found that the trial court had erred by admitting these experiments into evidence, we would not have found the matter to constitute reversible error. Generally, a reviewing court will not reverse a jury verdict because of an error in admission of evidence unless it appears that the error could have prejudiced the outcome and there has been a real denial of justice. (*Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 1019, 498 N.E.2d 867.) In this case, prior to the admission of defendant's evidence, plaintiff had been allowed to present testimony through his witness, George Hoy, concerning tests he had performed on the tractor. According to his testimony, several hundred attempts were made to force the range lever from neutral into gear without depressing the clutch and he had been successful only once or possibly twice. We note, too, that this testimony was admitted even though plaintiff was unable to establish under what conditions he had been able to force the lever into gear. We find that under these circumstances the admission of defendant's experiment evidence could not have unduly prejudiced the plaintiff's position.

Rios next charges that the trial court erred in giving the following two non-IPI instructions to the jury:

"No. 4A: There is no duty upon the manufacturer of a tractor to manufacture a product with a different design if the different design is not feasible. Feasibility includes the elements of effectiveness and practicality."

No. 9: In your consideration of whether at the time the tractor left the control of the defendant there existed a condition which made the tractor unreasonably dangerous, you may consider its compliance with relevant industry standards and practices. A standard or practice is relevant if it applies to the equipment and the use of that equipment involved in a particular case."

Plaintiff alleges that there was no evidence presented at trial to support the giving of instruction No. 4A and that it was "an abstract statement that could only mislead the jury." Plaintiff further alleges that the giving of instruction No. 9 severely prejudiced his case by misleading and confusing the jury.

The law concerning the giving of non-IPI instructions is de-

rived from Supreme Court Rule 239 (107 Ill. 2d R. 239) and the case law interpreting this rule. Basically, the law states that Illinois Pattern Jury Instructions (IPI), which were devised for a court to instruct a jury on the law in an impartial and nonargumentative manner, shall be used unless the court determines that they do not accurately state the law. (*Powers v. Illinois Central Gulf R.R. Co.* (1982), 91 Ill. 2d 375, 438 N.E.2d 152; *Woolley v. Hafner's Wagon Wheel, Inc.* (1961), 22 Ill. 2d 413, 176 N.E.2d 757.) The use of non-IPI instructions in addition to IPI instructions is improper where the IPI instructions correctly and adequately charge the jury. (*Kent v. Knox Motor Service, Inc.* (1981), 95 Ill. App. 3d 223, 419 N.E.2d 1253.) By the same token, however, each party has the right to have the jury instructed on his or her theory of the case, and the trial court must instruct the jury on all issues which it finds, in the exercise of its discretion, have been raised by the evidence presented. *Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 751, 464 N.E.2d 866.

■ In light of these principles, we find that the trial court did not err by instructing the jury with the non-IPI instructions tendered by defendant. Defendant's theory of the case was that the range lever was reasonably safe and designed in accordance with recommended industry standards and practice, which called for the placement of the lever to the left of the operator for efficiency and practicality. We note, too, that plaintiff's experts, as well as defendant's experts, relied upon various standards and industry practices in reaching their conclusions regarding the safety and appropriateness of the tractor design. Thus, it would appear that the non-IPI instructions were fully warranted by the evidence presented at trial. Additionally, the instructions correctly stated the law. See *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859 (a strict liability action where the court condoned an instruction nearly identical to instruction No. 4A used in this case, finding it to be an accurate statement of the law); *Ruffiner v. Material Service Corp.* (1987), 116 Ill. 2d 53, 58, 506 N.E.2d 581 (where the court held that evidence of standards promulgated by industry, trade, or regulatory groups or agencies are admissible to aid the trier of fact in determining whether a condition is unreasonably dangerous).

Finally, even if we were to grant plaintiff the gratuitous assumption that the use of these instructions had been improper, we would not find that the error warranted reversal since our review of the entire record convinces us that no harm could have accrued to plaintiff as a result of such error. See *Palmer v. Palmer* (1988), 169 Ill. App. 3d 828, 831, 523 N.E.2d 1316.

■ We now consider whether plaintiff was unduly prejudiced by the admission of defendant's reconstruction evidence. We begin our analysis by first acknowledging that whether reconstruction evidence should be admitted at trial is a matter within the trial court's discretion. (*Levin v. Welsh Brothers Motor Service, Inc.* (1987), 164 Ill. App. 3d 640, 649, 518 N.E.2d 205.) Generally, reconstruction testimony will not be allowed where the available physical evidence or eyewitness testimony is sufficient for a jury to draw conclusions on the material issues in question, but may be allowed in addition to eyewitness testimony when matters in the case involve scientific principles ordinarily beyond the ken of the jury and expert testimony would assist the jury in understanding these principles so that they might reach a correct and just verdict. *Plank v. Holman* (1970), 46 Ill. 2d 465, 471, 264 N.E.2d 12.

■ In a recent opinion, *Augenstein v. Pulley* (1989), 191 Ill. App. 3d 664, 547 N.E.2d 1345, the court discussed, at great length and detail, the status of the law in Illinois on the matter of admissibility of reconstruction evidence. The *Augenstein* court concluded that the admissibility of reconstruction evidence should be determined using the same standards announced by our supreme court concerning the admission of opinion evidence, *i.e.*, whether the proffered expert is qualified to render an opinion and whether his testimony will aid the fact finder in the resolution of the dispute. In that court's opinion, the availability of eyewitness testimony should be considered as merely one factor in determining whether the expert testimony will aid the fact finder in arriving at a just result. We agree with the *Augenstein* court's summarization and interpretation of the law concerning the admission of reconstruction evidence and find that, applying the standard set forth in that case, the trial court did not abuse its discretion by allowing the reconstruction testimony into evidence.

In this case Rios, the only eyewitness to the accident, could remember very little about the incident but indicated, consistent with his theory of recovery, that he was injured when he fell from the tractor after he inadvertently struck the range lever, placing it into gear. He was impeached on various details, however, raising an issue as to the sufficiency of the available eyewitness testimony. Navistar's expert was then permitted to express his opinion that the absence of injury to Rios' right leg, his post-accident position, and the design of the tractor, precluded the possibility that the accident occurred in the manner that plaintiff had described. He then submitted for consideration an alternative explanation of the accident, consistent with the evidence and the defendant's theory that no design defect existed in the tractor.

Under the circumstances of this case we find that the trial court's exercise of its discretion in allowing the reconstruction testimony was not error. There is no doubt that defendant's expert, Dr. Caulfield, based upon his credentials, background and experience, was highly qualified to testify. Thus, the issue is whether his testimony was helpful to the jury in resolving the dispute. We believe that the testimony was valuable in assisting the jury in understanding defendant's theory of the case and, therefore, was admissible.

Plaintiff's final issue on appeal is that the trial court erred by striking from the case plaintiff's claim that the step in the exit way of the tractor was not slip resistant, thereby taking this issue away from the jury. While it is true that a party has the right to have the jury instructed on his theory of recovery or defense, if that theory is supported by facts in evidence or by reasonable inferences drawn therefrom (*Wallace v. Weinrich* (1980), 87 Ill. App. 3d 868, 409 N.E.2d 336), to prevail in a strict liability action the plaintiff must show not only some defect in the product or its design, but also that the condition of the product proximately caused the injury. *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201.

In this case, although there was some evidence presented at trial that the step on the tractor was not equipped with a slip resistant surface, there was no evidence that Rios' injury was caused by a slip from this step. Rios testified that the accident occurred when he inadvertently hit the range lever with his left side and then fell to the ground as he was exiting the tractor. Hoy testified that a few weeks after the accident Rios had told him that his shirttail caught on the lever, pulling it into gear as he was in the process of getting off the tractor. Since Rios' own versions of the accident did not in any way implicate the condition of the step on the tractor, the court properly removed that issue from the jury.

While no trial is perfect, the record reflects that, in this instance, both parties had a fair opportunity to present their case. Consequently, reversal of the jury verdict and a remand for new trial is not warranted.

For the reasons stated above we affirm the judgment of the circuit court.

Affirmed.

COCCIA, P.J., and GORDON, J., concur.