WILLIAM PALMER, Plaintiff-Appellant, v. BETH CRAIG, Defendant-Appellee.

Fourth District   No. 4—92—0977

Argued June 16, 1993.—Opinion filed June 29, 1993.

Robert G. Kirchner (argued), of Lerner & Kirchner, of Champaign, for appellant.

John F. Bramfeld (argued), of Phebus, Tummelson, Bryan & Knox, of Urbana, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff William Palmer appeals a judgment of the circuit court of Champaign County entered upon a jury verdict in favor of defendant. The action was brought to recover damages resulting from defendant's alleged negligence in the operation of a motor vehicle. Plaintiff contends (1) the trial court erred in limiting testimony of his accident-reconstruction expert; (2) the trial court erred in refusing to instruct the jury regarding the legal significance of a stop sign located on private property; and (3) the cumulative effect of these errors caused the jury to render a verdict that is against the manifest weight of the evidence. We affirm.

On January 29, 1989, defendant was traveling in an easterly direction on the perimeter road surrounding Market Place Mall in

Champaign, Illinois. This perimeter road has four lanes, two in each direction. Defendant was in the right-hand lane, traveling between 30 and 35 miles per hour. Her car was in good condition, the day was clear and dry, and the time was approximately 3:30 p.m. Defendant had entered the perimeter road from Neil Street and, a few moments later, she noticed another car traveling in the same direction in the left-hand lane. The other car was moving at the same rate of speed and was located about half a car length behind her vehicle.

Defendant first noticed plaintiff's van when she was about four car lengths from it. Plaintiff's van was on an access road near Byerly Music, heading north, attempting to cross the perimeter road in order to enter the mall parking lot. This access road is controlled by a stop sign, but defendant testified the van was not stopped, but rolling. (This description is in conflict with deposition testimony where she agreed to defense counsel's description of a van stopped on the access road.) Upon seeing the van ahead of her and on her right, defendant removed her foot from the accelerator and started to lower her speed. As plaintiff began to cross the perimeter road, defendant slammed on her brakes and, moments later, collided with the side of the van near the driver's door. After the collision her own vehicle came to a stop, while plaintiff's vehicle continued moving, skipped a curb surrounding an island at the entrance to the parking lot, brushed against a small tree, and hit a car located in the parking area. Defendant claims she hit the van squarely in the outermost (right-hand) lane of the perimeter road. After impact, her car angled a bit to the left.

Billy Rickard, a disinterested witness, was driving his car half a car length behind defendant's vehicle and in the innermost (left-hand) lane of the eastbound perimeter road. He first saw plaintiff's vehicle just as it was entering the perimeter road. He had no idea whether plaintiff came to a full stop at the stop sign. Rickard testified the collision occurred in the outermost (right-hand) lane of the perimeter road and that impact was dead center ("t-boned"). When asked whether or not defendant had applied her brakes, he replied he did not see that she had time to do anything. Rickard hit his own brakes and merely attempted to stay out of the accident. Nevertheless, his right front fender came into contact with defendant's left-rear-quarter panel. Overall, Rickard's testimony completely corroborates defendant's description of events.

Plaintiff testified that when he arrived at the intersection there was a car driven by a female in front of him. He saw her look both ways at the stop, then cross the four lanes of the perimeter road and enter the parking lot. He then testified:

"I moved up to the corner when she left, and watched her to [*sic*] go completely across the two eastbound lanes, the two westbound lanes, enter into the parking lot, and I proceeded from that point on out to go across."

Plaintiff acknowledges the existence of the stop sign controlling his access to the perimeter road, but does not indicate he stopped there; nor does he state he looked both ways before crossing.

Plaintiff contends that as he crossed the intersection he heard a thud to his left. At the time he heard this sound, he was in the northeast quadrant of the intersection (westbound lanes). A moment later defendant's car hit his van, just behind the driver's side door. The impact drove the van over the island adjacent to the opening to the parking lot, where it grazed a tree. After he went over the island, and while bringing the vehicle back under control, he hit a vehicle in the parking lot driven by Jane Good.

Jane Good was driving the vehicle that preceded plaintiff's van in crossing the intersection into the parking lot. After plaintiff traveled over the curb surrounding the island, he hit the right front side of her vehicle. Good testified she saw debris from the accident being swept up from the westbound lanes of the perimeter road. She also stated glass was spread around and that it was being swept toward the north (toward the westbound lanes). She had no idea where they started to sweep.

The court also heard testimony from plaintiff's accident-reconstruction expert, Michael Cooper. Defendant had filed a motion *in limine*, arguing the inadmissibility of this evidence where eyewitness testimony is available and where it is not necessary to rely upon knowledge beyond the ken of the average juror. Furthermore, defendant objected to the fact that Cooper arrived at his conclusions by selecting elements of the eyewitness testimony he believed (such as the velocity of the vehicles) and ignoring those elements that did not fit his hypothesis. Plaintiff countered that various factors such as the weights of the respective vehicles and the effects of mass and speed in the determination of the point of impact are beyond the ken of the average juror. As an offer of proof, plaintiff submitted the text of Cooper's analysis, which concluded that the point of impact was in the westbound lanes. The trial court ruled that Cooper would be allowed to testify as to the location of the collision, but he would not be allowed to testify as to where the collision did *not* occur. In other words, the expert would not be allowed to impeach the credibility of the eyewitnesses.

■ The general rule is that reconstruction testimony may not be used as a substitute for eyewitness testimony. Reconstruction testimony may only be used in addition to eyewitness testimony if it is determined necessary to rely upon knowledge and application of principles of science beyond the ken of the average juror. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 359, 392 N.E.2d 1, 3; *McGrath v. Rohde* (1972), 53 Ill. 2d 56, 61, 289 N.E.2d 619, 622-23.) Application of this rule has proved to be extremely difficult for our courts. The issue has been resolved in a variety of ways, giving rise to countless restrictions and exceptions. An extensive overview of these decisions can be found in *Augenstein v. Pulley* (1989), 191 Ill. App. 3d 664, 547 N.E.2d 1345, *appeal denied sub nom. Augenstein v. Steinmetz* (1990), 131 Ill. 2d 557, 553 N.E.2d 393.

The *Augenstein* court identified two fundamental reasons for the exclusion of reconstruction evidence. The first is the court's assessment that jurors are well aware of driving situations and do not require the assistance of experts in reaching their decision. The second is that many reconstruction experts are police officers with little or no training in physics and, therefore, unable to provide expertise in a truly scientific field. The *Augenstein* court concluded the fact "that *some* witnesses may not be properly qualified as experts or that *some* opinions may not assist the fact finder does not justify a slavish adherence to a rule that excludes reconstruction evidence in *all* cases in which there is eyewitness testimony." (Emphasis in original.) *Augenstein*, 191 Ill. App. 3d at 680, 547 N.E.2d at 1355.

■ Acknowledging the proposition that reconstruction testimony is still not a favorite of the courts in cases involving eyewitnesses, the *Augenstein* court held that the admissibility of this type of evidence is to be based upon the rules announced by the supreme court for opinion testimony. Accordingly, the court must only determine (1) whether the expert is qualified in the field, and (2) whether his testimony will aid the fact finder in a resolution of the dispute. The presence of eyewitnesses thus becomes one factor, rather than the sole factor, in determining whether evidence is admissible.

■ We find the *Augenstein* court's approach to the issue of reconstruction evidence persuasive and join those courts adopting its holding. (See *Robles v. Chicago Transit Authority* (1992), 235 Ill. App. 3d 121, 601 N.E.2d 869; *Rios v. Navistar International Transportation Corp.* (1990), 200 Ill. App. 3d 526, 558 N.E.2d 252, *appeal denied* (1990), 133 Ill. 2d 572; *Magna Bank v. Ogilvie* (1992), 235 Ill. App. 3d 318, 601 N.E.2d 1091.) Whether reconstruction evidence should be admitted at trial is a matter within the court's discretion. (*Rios*, 200 Ill.

App. 3d at 536, 558 N.E.2d at 259.) However, it has been a long-standing rule of this court that expert reconstruction opinion may not be used to impeach otherwise credible eyewitness testimony. (*National Bank v. Pickens* (1972), 8 Ill. App. 3d 58, 289 N.E.2d 64.) The trial court's decision prohibiting the expert from directly impeaching the eyewitnesses with evidence that the collision could *not* have taken place in the eastbound lanes represents a sound application of this long-standing principle.

Plaintiff contends this limitation rendered the expert's testimony virtually meaningless, since the jury was not fully informed as to the basis of the expert's opinion. We find this argument without merit. Plaintiff's expert was allowed to explain in detail the basis for his opinion corroborating plaintiff's version of events. We find no prejudice to plaintiff's case.

■ Next, plaintiff contends the trial court erred in refusing to instruct the jury regarding the legal significance of a stop sign located on private property. Both the access road from which plaintiff entered the intersection and the perimeter road itself are located on private property. Section 11—201 of the Illinois Vehicle Code (Code) states that the provisions of the Illinois Rules of the Road refer exclusively to operation of vehicles upon highways. (Ill. Rev. Stat. 1991, ch. 95½, par. 11—201.) "Highway" is defined, in pertinent part, as the entire width between the boundaries of every way *publicly* maintained. (Ill. Rev. Stat. 1991, ch. 95½, par. 1—126; see also *Romano v. Bittner* (1987), 157 Ill. App. 3d 15, 510 N.E.2d 924.) Accordingly, plaintiff submitted nonpattern instruction No. 27, stating:

> "Market Place Shopping Center is private property. The Rules of the Road do not apply to private property. In reaching your verdict, you are not to infer that the stop sign on Access Road for northbound traffic created any legal obligation on the Plaintiff to stop before crossing Ring Road, nor that it created any legal obligation on the Plaintiff to yield to traffic traveling on Ring Road before crossing Ring Road."

The trial court viewed this instruction as an anticipatory defense to Illinois Pattern Jury Instruction, Civil, No. 60.01, which informs the jury that a particular statute was in effect and, should it decide it violated the statute, the jury would be allowed to consider this fact in determining whether the party was negligent. (Illinois Pattern Jury Instructions, Civil, No. 60.01 (3d ed. 1992).) Defense counsel assured the court that he had no intention of submitting this instruction. The trial court advised plaintiff's counsel he was free to explain to the jury that no statutory violations of the Code could arise from failure

to obey this stop sign. However, the trial court found there may be rights or obligations of a civil nature implicated and that it would be the jury's duty to decide the issue.

The trial court concluded, and we agree, that plaintiff's nonpattern instruction No. 27 would only have served to confuse the jury. Instructing the jury that the stop sign created no legal obligation implies plaintiff was free to ignore the stop sign or any other traffic control signal or device located on private property—an implication which we find ridiculous.

Plaintiff argues that without being instructed in the manner proposed, the jury, employing its experiences in the ordinary affairs of life, would be led to conclude that certain obligations and rights flowed from the mere existence of the stop sign. We agree. Assuming the jury has been selected from an intelligent and mature pool of citizens, we hope they would infer that the mere presence of a stop sign does in fact obligate a person to stop. To do otherwise would indicate a failure to use ordinary care. We find no error in the trial court's rejection of plaintiff's nonpattern instruction No. 27.

Related to the argument above is plaintiff's contention that the court erred in failing to instruct the jury to ignore defense counsel's remarks in his opening statements regarding the existence of a stop sign on the access road upon which plaintiff was driving. For the reasons cited above, we find no error.

■ Finally, plaintiff contends the cumulative effect of the claims of error discussed above caused the jury to render a verdict against the manifest weight of the evidence. Plaintiff's own testimony indicates that he crossed an intersection without looking left or right. Regardless of the lane where the collision occurred, and regardless whether he came to a full stop at the stop sign, a jury was entitled to believe he did not exercise due care in the operation of his motor vehicle. The verdict was not against the manifest weight of the evidence.

Affirmed.

STEIGMANN, P.J., and KNECHT, J., concur.