# Illinois Official Reports

## Supreme Court

<div style="border:1px solid">

### *Peach v. McGovern*, 2019 IL 123156

</div>

| | |
|---|---|
| Caption in Supreme Court: | WILLIAM KEVIN PEACH, Appellee, v. LYNSEY E. McGOVERN, Appellant. |
| Docket No. | 123156 |
| Filed | January 25, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Marion County, the Hon. Kevin S. Parker, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Edward L. Adelman, Robert M. Susman, and Lori R. Koch, of Goffstein, Raskas, Pomerantz, Kraus & Sherman LLC, of St. Louis, Missouri, for appellant. |
| | George R. Ripplinger, of Ripplinger & Zimmer, LLC, of Belleville, for appellee. |
| | Martin K. Morrissey and Michael J. Bedesky, of Reed, Armstrong, Mudge & Morrissey, P.C., of Edwardsville, and Steve Grossi, of Bruce Farrel Dorn & Associates, of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel. |

Justices           JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

# OPINION

¶ 1      Plaintiff William Kevin Peach, a motorist whose vehicle was rear-ended, sued the other driver, defendant Lynsey E. McGovern, in the circuit court of Marion County for personal injuries he sustained in the accident. The jury returned a verdict in favor of defendant, and the circuit court entered judgment on that verdict. The appellate court reversed and remanded for a new trial on damages, holding that the circuit court erred in allowing admission of postaccident photographs of the vehicles absent expert testimony and that the jury verdict was not supported by the evidence. 2017 IL App (5th) 160264. This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Nov. 1, 2017). For the following reasons, we reverse the judgment of the appellate court.

¶ 2                           I. BACKGROUND

¶ 3      Plaintiff brought a claim for injuries alleging that defendant was negligent when she rear-ended his vehicle, thereby causing injury to plaintiff's neck. The following evidence was adduced at the jury trial.

¶ 4      On July 17, 2010, at approximately 10 p.m., plaintiff was on his way home from visiting his girlfriend, Nicole Carter. As he was driving his 1985 Nissan pickup truck, he had to stop at a stop sign at North Shelby Street and East Main Street in Salem, Illinois. While waiting at the stop sign for traffic to clear, the rear of plaintiff's truck was struck by defendant's vehicle. Plaintiff testified that, when the collision occurred, his head hit the back window of his truck and his neck began hurting immediately.

¶ 5      The vehicle that rear-ended plaintiff's truck was a 2001 Mitsubishi Eclipse driven by defendant, who was also on her way home. Defendant, testifying as an adverse witness, stated that she saw plaintiff stopped at a stop sign. She then fully stopped behind plaintiff's truck. Defendant testified that she "spaced out" and let her "foot off the brake just a little bit, [and] tapped into his truck." She never pressed the gas pedal once she had stopped.

¶ 6      After the accident, both plaintiff and defendant got out of their vehicles to inspect the damage, and eventually both walked away from the collision. Plaintiff testified that his back bumper was dented and "it looked like defendant's front end was cracked a little bit." Defendant testified that the license plate on her car was bent. Although the front bumper of defendant's car had a crack, it was never determined if the accident caused this crack. Both plaintiff and defendant testified that the photographs taken of their respective vehicles subsequent to the accident were accurate representations of the condition of their vehicles immediately after the accident. The photos reflected minor damage to both vehicles. All of the photos were admitted into evidence, over plaintiff's objections.

¶ 7 Plaintiff testified that defendant was unwilling to call the police or exchange information. Instead, defendant left the scene. However, plaintiff was able to get her license plate number. Plaintiff drove back to Carter's residence because his neck was hurting, he had a headache, and he felt as if he was in a daze.

¶ 8 Carter testified that plaintiff came back to her home about 15 minutes after he had left. He appeared to be disoriented and was complaining of "a severe headache and a lot of pain." She testified that plaintiff stated he had been "plowed" into and that defendant was on her cell phone. Carter drove plaintiff to the emergency room of the Salem Township Hospital in Salem, Illinois. She testified that, 5½ years after the accident, plaintiff still complained of neck pain and once or twice every other day he would take Tylenol and lie down to alleviate the pain.

¶ 9 Plaintiff testified that, while he was in the emergency room, the staff put him in a neck collar and put him on a backboard. The staff did blood work and various tests. The staff also contacted the police so that an accident report could be made.

¶ 10 Plaintiff testified that since the accident occurred he has experienced chronic neck pain. A few days after the accident, plaintiff sought treatment from his family physician, Dr. Luecha Rutngamlug. Plaintiff was given steroids and a neck brace, but nothing helped. Plaintiff underwent a magnetic resonance image (MRI) of his cervical spine on September 16, 2010. He was referred to Dr. Michael Templer, a pain management specialist at the Orthopaedic Center of Southern Illinois in Mount Vernon. Plaintiff further testified that even now, six years later, he still has neck pain and every three to four days he has to rest because of the pain. He also testified that at the time of trial his medical bills exceeded $23,000. Regarding plaintiff's vehicle, he testified that as a result of the accident, three or four days after the accident, the brackets on his truck bed failed and the truck was thereafter no longer drivable.

¶ 11 Dr. Templer's testimony was presented in an evidence deposition. He was board certified in anesthesiology and pain management. Dr. Templer testified that he began seeing plaintiff on October 5, 2010, three months after the accident. Plaintiff had filled out a preexamination form in which he stated that his chief complaint was neck pain as the result of being rear-ended in a car accident with the estimated speed of impact at 25 to 30 miles per hour. At that first meeting, Dr. Templer did a physical examination of plaintiff and found "some tenderness in his upper trapezius muscle, splenius capitis, paraspinal region." Dr. Templer explained that plaintiff had tenderness throughout his entire neck.

¶ 12 Dr. Templer also reviewed the MRI provided by plaintiff, which revealed that plaintiff was suffering from some degenerative changes that had accumulated over the years but also from more recent acute injuries. Specifically, the MRI showed a straightening of the normal cervical lordiosis, which is consistent with neck muscle spasm and pain, moderate right stenosis foraminal narrowing that could give a person some pain into the right upper trapezius muscle, and compression of the nerves in the spinal cord. Plaintiff also had cervical sprain or strain, which is consistent with a whiplash injury. Dr. Templer prescribed a tapering dose of steroids, an anti-inflammatory medication, and recommended a medial branch block injection, which would numb the nerves. The branch block was administered on November 11, 2010. Neither of these treatments helped plaintiff's neck pain. The last time Dr. Templer saw plaintiff was on December 2, 2010, when plaintiff was offered a second medial branch block or an epidural injection. He declined both.

¶ 13 Dr. Templer's final diagnosis was "[w]hiplash syndrome, chronic neck pain, cervical facet arthropathy, cervical disc herniation, possible cervicogenic pain, cervical annular tear, and possible cervical radiculopathy, cervical foraminal stenosis, and cervical degenerative disc disease." He opined that the accident caused whiplash and may have caused an annular tear and loss of integrity of disc space. He explained that, with whiplash, the neck moves beyond its typical range of motion and the overextension and flexion of the neck is the mechanism that causes the chronic pain. He stated that even a low-speed collision can cause hyperflexion/hyperextension injuries.

¶ 14 On cross-examination, after defense counsel asked if photos showing minor damage would have any effect on his diagnosis, Dr. Templer responded that he could not answer the question because it was not his expertise, as he was not a mechanical engineer. He stated that he was not "an expert in determining the damage done by a vehicle." He explained that he was relying on what plaintiff told him and the objective findings in the MRI. In answer to the question whether the findings in his diagnosis could have been caused by the accident he responded, "Yes." Over plaintiff's objections, in response to the question whether they might not have been caused by this accident, he responded, "Yes. That's true. It might not have been caused by the accident." Dr. Templer was also asked if some other event could have caused the findings, and he answered that "a lot of things could have happened" but he did not know of anything.

¶ 15 Garland Simmons, a sergeant with the Salem Police Department, testified that he was dispatched to the hospital where he spoke with plaintiff. Sergeant Simmons made an accident report and checked the vehicle registration of the license plate number he was given by plaintiff. He subsequently contacted defendant, and she admitted she had been involved in a vehicular accident. Defendant was ticketed for failure to reduce speed to avoid an accident and pled guilty to the offense. Sergeant Simmons further testified that plaintiff informed him there was minimal damage to both vehicles.

¶ 16 Defendant did not put on any witnesses. At the close of the evidence, the circuit court directed a verdict for plaintiff on the issue of negligence but reserved the questions of causation and damages for the jury. The jury subsequently returned a verdict in favor of defendant, awarding plaintiff zero damages. The circuit court denied plaintiff's motion for a new trial on the issue of damages and defendant's liability for those damages.

¶ 17 On appeal, plaintiff raised two issues. He contended that the court erred in allowing defense counsel to argue there was a correlation between the amount of damage to the vehicles as depicted in the photographs and plaintiff's injuries, absent expert testimony, and the verdict was against the manifest weight of the evidence. The appellate court agreed with plaintiff and reversed the circuit court. 2017 IL App (5th) 160264.

¶ 18 The appellate court reasoned that

"while the photographs may have been relevant to allow the jury to infer the relative speed of the vehicles, there was clearly no evidence at trial relating the damage depicted in the photographs as the proximate cause of plaintiff's overextension and flexion of his neck, the annular tear, the right disc protrusion at C3-4, or the loss of the integrity of plaintiff's disc space. Indeed, these kinds of injuries, as described by Dr. Templer, are not within the ken of the ordinary juror and require the testimony of an expert witness." *Id.* ¶ 16.

¶ 19    The appellate court concluded that, where the injuries were as complicated as plaintiff's and the expert opined that such injuries could occur in low-impact collisions and that he did not have the expertise to make the correlation between impact and injury, expert testimony was required before the photos would be relevant and admissible. *Id.* ¶¶ 16-19. The appellate court explained that the circuit court

> "had found defendant negligent as a matter of law, but left the issue of causation and damages for the jury. A verdict in favor of plaintiff on the issues of causation and damages should have followed, given the testimony and medical evidence presented at trial. From the evidence, it is clear that the jury should have concluded that defendant's negligence proximately caused plaintiff's injuries. We find it unreasonable that any jury, under the circumstances and the evidence presented, would not have at least awarded recovery for plaintiff's hospital expenses incurred immediately after the collision. We recognize that the jury can disbelieve any testimony, at any time, even when uncontradicted, but we conclude that, in this instance, the jury's findings are unreasonable and not based on the evidence presented at trial." *Id.* ¶ 21.

The court remanded for a jury trial on the issue of damages, with the minimum to cover plaintiff's hospital expenses. *Id.* ¶ 23.

¶ 20    Defendant appeals to this court. The Illinois Association of Defense Trial Counsel was granted leave to submit an *amicus curiae* brief in support of defendant. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). Additional pertinent facts will be discussed in the context of the issues raised on appeal.

¶ 21                                    II. ANALYSIS

¶ 22    Before this court, defendant argues that the appellate court erred on three grounds: (1) by reversing the circuit court's admission of postaccident vehicular photographs without requiring expert testimony, (2) by reversing the circuit court's denial of plaintiff's motion for a new trial, and (3) by essentially entering a judgment notwithstanding the verdict while applying an incorrect standard of review.

¶ 23              A. Admissibility of Postaccident Vehicular Photographs

¶ 24    Defendant argues that the appellate court erred in reversing the circuit court's admission of postaccident vehicular photographs without requiring expert testimony. According to defendant, since the circuit court found the postaccident vehicular photographs relevant, it did not abuse its discretion in admitting the same without expert testimony interpreting the photos. Plaintiff responds that the photos were irrelevant to any issues in this case because Dr. Templer testified that plaintiff's injuries could occur even in a low-speed collision. Plaintiff contends that, because speed was not determinative of what caused his injuries, the photos indicating minor damage to the vehicles were irrelevant. We disagree with plaintiff.

¶ 25    It is within the discretion of the circuit court to decide whether evidence is relevant and admissible, and a reviewing court will not disturb the circuit court's decision absent a clear abuse of that discretion. *In re Marriage of Bates*, 212 Ill. 2d 489, 522 (2004). An abuse of discretion occurs only where no reasonable person would take the position adopted by the circuit court. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).

¶ 26    Evidence is deemed relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ill. R. Evid. 401 (eff. Jan. 1, 2011). "Relevancy is 'tested in the light of logic, experience and accepted assumptions as to human behavior.' " *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 57 (2000) (quoting *Marut v. Costello*, 34 Ill. 2d 125, 128 (1965)). Under Illinois Rule of Evidence 402 (eff. Jan. 1, 2011), all relevant evidence is admissible except as otherwise provided by law.

¶ 27    In general, photographic evidence is admissible if it has a reasonable tendency to prove or disprove a material fact at issue in the case but may be excluded when irrelevant or immaterial or if its prejudicial nature outweighs its probative value. *Johnson v. Bailey*, 2012 IL App (3d) 110016, ¶ 13. In deciding the admissibility of postaccident vehicular photographs, once a proper foundation has been laid (*People v. Taylor*, 2011 IL 110067, ¶ 32; *Johnson*, 2012 IL App (3d) 110016, ¶ 13), the circuit court must determine whether the photos make the resulting injury to the plaintiff more or less probable and whether the photos may be relevant with regard to impeachment (Ill. R. Evid. 401 (eff. Jan 1, 2011); see also *Marut*, 34 Ill. 2d at 128).

¶ 28    Here, the appellate court relied on *Baraniak v. Kurby*, 371 Ill. App. 3d 310 (2007), and *DiCosola v. Bowman*, 342 Ill. App. 3d 530 (2003), for the proposition that, absent expert testimony connecting the vehicle damage depicted in postaccident photographs to the plaintiff's injuries, such photographs are not relevant and, therefore, not admissible. 2017 IL App (5th) 160264, ¶¶ 15-16, 18-19. In support of that proposition, *Baraniak* cited *DiCosola*, which cited this court's decision in *Voykin*, 192 Ill. 2d 49.

¶ 29    We find that, in the context of those cases, reliance on *Voykin* was misplaced. In *Voykin*, the controlling issue was whether a defendant must introduce medical or other competent evidence of a causal relationship between a plaintiff's prior injury and the present injury. *Id.* at 51. Resolution of that issue focused on the validity of the " 'same part of the body rule,' " which permitted a defendant to introduce evidence that the plaintiff had previously suffered injuries similar to those at issue. *Id.* at 53. Under that doctrine, evidence of a prior injury was admissible without a showing that it was causally connected to the present injury, provided both injuries affected the same part of the body. *Id.*

¶ 30    This court rejected the doctrine, noting that it was "nothing more than a bright-line relevancy standard." *Id.* at 57. The court explained that relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. *Id.* The *Voykin* court instead decided that, for evidence of a plaintiff's prior injury to be admissible, the prior injury must make the existence of a fact that is of consequence more or less probable. *Id.* The *Voykin* court pointed out that " '[j]urors are not skilled in the practice of medicine.' " *Id.* at 58-59 (quoting *Walski v. Tiesenga*, 72 Ill. 2d 249, 256 (1978)). The court further explained:

    "Without question, the human body is complex. *** In most cases, the connection between the parts of the body and past and current injuries is a subject that is beyond the ken of the average layperson. Because of this complexity, we do not believe that, in normal circumstances, a lay juror can effectively or accurately assess the relationship between a prior injury and a current injury without expert assistance. Consequently, we conclude that, if a defendant wishes to introduce evidence that the plaintiff has suffered a prior injury, whether to the 'same part of the body' or not, the defendant must

- 6 -

introduce expert evidence demonstrating why the prior injury is relevant to causation, damages, or some other issue of consequence. This rule applies unless the trial court, in its discretion, determines that the natures of the prior and current injuries are such that a lay person can readily appraise the relationship, if any, between those injuries without expert assistance." *Id.* at 59.

¶ 31    Because *Voykin* was predicated on the admissibility of evidence of the plaintiff's prior injury, it is factually distinguishable from both *Baraniak* and *DiCosola*, which did not involve prior injuries. *DiCosola* improperly applied *Voykin*'s reasoning to the relationship between vehicular damage and the nature and extent of a plaintiff's personal injuries (*DiCosola*, 342 Ill. App. 3d at 536-37), and *Baraniak* did the same (see *Baraniak*, 371 Ill. App. 3d at 317-18 (citing *DiCosola*)). Thus, *DiCosola* and *Baraniak* extended *Voykin* beyond its reasonable limits. Accordingly, to the extent that those appellate court cases are inconsistent with the analysis set forth below, they are overruled.

¶ 32    Here, as in *Baraniak* and *DiCosola*, there is no prior injury involved. This is not a case where jurors must determine whether there is a connection between the plaintiff's past and current injuries. Given that factual distinction, there is no common thread connecting the reasoning in *Voykin* to this case.

¶ 33    In light of the above, we find it necessary to clarify the law governing the admissibility of postaccident vehicular photographs. We conclude that the proper analysis is that expressed by the appellate court in *Ford v. Grizzle*, 398 Ill. App. 3d 639 (2010), *Fronabarger v. Burns*, 385 Ill. App. 3d 560 (2008), *Jackson v. Seib*, 372 Ill. App. 3d 1061 (2007), and *Ferro v. Griffiths*, 361 Ill. App. 3d 738 (2005).

¶ 34    In each of these cases, the plaintiff sought recovery for injuries allegedly sustained in an automobile collision and asserted that postaccident photographs of the vehicles were not admissible unless expert testimony was presented to show a correlation between the amount of vehicular damage and the plaintiff's injuries. *Ford*, 398 Ill. App. 3d at 648; *Fronabarger*, 385 Ill. App. 3d at 564; *Jackson*, 372 Ill. App. 3d at 1070; *Ferro*, 361 Ill. App. 3d at 742. The appellate court refused to adopt a rigid rule that photographs of the vehicles involved in a collision are always admissible or that expert testimony is always necessary for such photographs to be admitted. *Ford*, 398 Ill. App. 3d at 648; *Fronabarger*, 385 Ill. App. 3d at 564; *Jackson*, 372 Ill. App. 3d at 1070; *Ferro*, 361 Ill. App. 3d at 743.

¶ 35    The decision in each case observed that the essential question in deciding the admissibility of vehicular photographs is "whether the jury can properly relate the vehicular damage depicted in the photos to the injury without the aid of an expert," which is an evidentiary question that must be resolved by the trial judge. *Ford*, 398 Ill. App. 3d at 648; *Fronabarger*, 385 Ill. App. 3d at 564-65; *Jackson*, 372 Ill. App. 3d at 1070-71; *Ferro*, 361 Ill. App. 3d at 743. The appellate court held in each case that it could not conclude that the trial court had abused its discretion by admitting vehicular photographs in the absence of expert testimony. *Ford*, 398 Ill. App. 3d at 648; *Fronabarger*, 385 Ill. App. 3d at 565; *Jackson*, 372 Ill. App. 3d at 1071; *Ferro*, 361 Ill. App. 3d at 743.

¶ 36    We find that the reasoning of the appellate court in *Ford*, *Fronabarger*, *Jackson*, and *Ferro* correctly illustrates the application of the rules for the admission of postaccident vehicular photographs without expert testimony.

¶ 37    Turning to the admission of the postaccident vehicular photographs in the case at bar, the appellate court reasoned that, where the injuries were as complicated as plaintiff's and his treating doctor testified that they could occur in low-impact collisions and that he did not have the expertise to make the correlation between the impact and injury, expert testimony was required before the photos would be relevant and admissible. 2017 IL App (5th) 160264, ¶¶ 14-19. The court concluded that the postaccident photos of the vehicles were simply not relevant unless a party offering the photographs presented expert testimony to connect the damage depicted in the photographs to plaintiff's disputed injury claim. *Id.* ¶ 19. We disagree.

¶ 38    Postaccident photographs, just like testimony of witnesses describing an accident, are relevant to the issues of proximate cause and injury. *McGrath v. Rohde*, 53 Ill. 2d 56, 61 (1972); *Ferro*, 361 Ill. App. 3d at 743. Further, neither the photos nor the witness testimony need necessarily prove or disprove a particular medical condition in order to be admissible. See Ill. R. Evid. 401 (eff. Jan. 1, 2011). Complete certainty is not required for admissibility. *Hawn v. Fritcher*, 301 Ill. App. 3d 248, 255 (1998). " 'An item of evidence being but a single link in a chain of proof, need not prove conclusively the proposition for which it is offered. *** It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without the evidence.' " *Id.* at 254 (quoting John W. Strong, McCormick on Evidence § 185, at 776-77 (4th ed. 1992)). Additionally, arguments about inferences from a party's testimony concerning the nature of impact are equally and appropriately made from the photographs. See *Marut*, 34 Ill. 2d at 128; *Moran v. Erickson*, 297 Ill. App. 3d 342, 356 (1998); *Phillips v. Lawrence*, 87 Ill. App. 2d 60, 63 (1967).

¶ 39    If a jury is allowed to consider relevant testimony about vehicle speed and impact forces, a jury should be permitted to consider photographs that depict the damage, or lack thereof, done to the vehicles. See *McGrath*, 53 Ill. 2d at 61; *Plank v. Holman*, 46 Ill. 2d 465, 470-71 (1970) (finding that the truth-seeking process is best served by requiring direct evidence, rather than secondary evidence). These subjects are traditionally things jurors can understand, and experts have not been needed to supplement witness descriptions of events. *McGrath*, 53 Ill. 2d at 60-61; *Plank*, 46 Ill. 2d at 470-71. Illinois courts have long recognized the jury's proper role in evaluating vehicle accident cases and the credibility of witnesses based on facts testified to and demonstrated by photographs. See *Drews v. Gobel Freight Lines, Inc.*, 144 Ill. 2d 84, 101 (1991) (holding that the trial court could have validly determined that the photographs were relevant to show the extent of the decedent's pain and suffering immediately after the accident and, thus, there was no abuse of its discretion); *McGrath*, 53 Ill. 2d at 61 (finding that the questions for the jurors did not require a scientific knowledge beyond that of typical jurors, the questions involved the driving actions of the plaintiff and defendant at the time, and a factual determination of these questions did not necessitate expert evidence to supplement the eyewitness testimony available); *Gaines v. Townsend*, 244 Ill. App. 3d 569, 575 (1993) (determining that the evidence, the testimony of the parties, and the depositions of the doctors bring into question the extent of plaintiff's injuries and whether they were proximately caused by defendant's negligence and holding that whom to believe and the weight to be given all of the evidence are matters for the trier of fact); *Philips*, 87 Ill. App. 2d at 63 (stating "[b]oth logic and experience indicate that a person in a stopped car, struck by another car going at a speed in excess of 65 miles per hour, is more likely to receive more serious injuries than one similarly situated who is struck by a car going at a much slower speed. Under the circumstances, we believe the evidence of the speed of defendant's car was admissible as having some bearing

on the extent of the injuries suffered by plaintiff and that it was error of the trial court to exclude this evidence.").

¶ 40    In the case at bar, the photos were introduced to determine whether plaintiff was telling the truth about his injuries when there was minor damage to the parties' vehicles: plaintiff's back bumper was dented, and defendant had a bent license plate, and the front bumper was cracked. As set forth above, the essential question in deciding the admissibility of postaccident photographs is whether the jury understands the evidence and can relate the vehicular damage depicted in the pictures to the injury without the aid of an expert. This is an evidentiary question to be resolved by the trial judge. *Ford*, 398 Ill. App. 3d at 648; *Fronabarger*, 385 Ill. App. 3d at 565*; Jackson*, 372 Ill. App. 3d at 1070-71; *Ferro*, 361 Ill. App. 3d at 743.

¶ 41    With regard to plaintiff's injuries, plaintiff testified that he has had chronic neck pain for the last six years as a result of the accident, although there was minor damage to the vehicles. Dr. Templer testified that "[e]verything fit for a hyperflexion/hyperextension injury for whiplash syndrome." Although there were complicated medical diagnoses and medical terminology introduced at trial, Dr. Templer also provided a layperson's explanation, and thus, the testimony could be understood by the average juror. For example, when asked what he meant by compression of the right lateral recess, he explained that "there could be compression of the nerves in the spinal cord." Further, when asked what was meant by his finding that there was tenderness in plaintiff's "upper trapezius muscle, splenius capitis, paraspinal region," Dr. Templer explained that there was tenderness throughout plaintiff's neck. Dr. Templer testified that the accident could have caused plaintiff's injuries but also testified that the accident might not have caused the injuries.

¶ 42    Regarding credibility, as earlier observed, there was contradictory testimony from plaintiff regarding the nature and speed of the impact. Plaintiff's girlfriend testified that plaintiff told her he was "plowed" into. Plaintiff reported to his doctor that his truck had been rear-ended, estimated the speed of the impact to be about 25 to 30 miles per hour, and informed the police officer that there was minor damage to both vehicles. Plaintiff also testified that his back bumper was dented and four days after the accident his truck was no longer driveable. Defendant testified that she was at a complete stop behind plaintiff's car and rolled into the back of plaintiff's vehicle. The photographs depicted minor physical damage to both vehicles as a result of the accident. *Cf. Kayman v. Rasheed*, 2015 IL App (1st) 132631, ¶¶ 64-65 (finding that there was no testimony at trial regarding the nature of the impact; thus, there was simply no basis to use the photograph of vehicle damage as impeachment on that issue).

¶ 43    Given these facts, the circuit court could properly have found that the pictures, when considered with other evidence, were relevant to prove the matters at issue were "more or less probable." Ill. R. Evid. 401 (eff. Jan. 1, 2011); *Marut*, 34 Ill. 2d at 128; *Ferro*, 361 Ill. App. 3d at 742-43. Thus, we cannot say that the court abused its discretion by admitting the photographs without requiring expert testimony.

¶ 44    Additionally, requiring an expert physician or auto reconstruction engineer to testify and explain evidence that is understood by the jurors imposes financial burdens on an already expensive discovery and trial process. Requiring an expert witness when there is no prior accident or preexisting injury forces parties to the task of finding and employing experts instead of simply permitting the jury to apply common sense and experience to evidence relevant to the causation issue in the case. Moreover, *pro se* parties, both plaintiff and

- 9 -

defendant, may find it impossible to effectively proceed given the new financial burdens involved with expert retention.

¶ 45 Witness testimony about the speed of the vehicles, the force of impact, and the existence or extent of any resulting injuries in an automobile accident does not necessarily require scientific, technical, or other specialized knowledge in order for the trier of fact to understand the evidence and determine a fact in issue. *Brenman v. Demello*, 921 A.2d 1110, 1120 (N.J. 2007).

¶ 46 Juries are entitled to infer that which resides squarely in the center of everyday knowledge, the certainty of proportion, and the resulting recognition that slight force most often results in slight injury and great force most often is accompanied by great injury. *Id.* at 1120-21. Further, nothing prevented plaintiff from offering expert proofs for the purpose of persuading the factfinder to overcome an absence of proportionality between the force of the impact and the cause and severity of the resulting injuries, as Dr. Templer testified that this was not his expertise. See *id.* at 1120. Of course, such expert proofs address the weight to be given to photographs of impact, not their admissibility. *Id.* at 1120-21.

¶ 47 Consequently, we find that the photographs were relevant because they had a tendency to make a fact that was of consequence to the determination of the action, the existence and extent of plaintiff's injuries, more probable or less probable than it would be without the evidence and to aid in the determination of credibility of the parties and, thus, admissible. Ill. R. Evid. 401 (eff. Jan. 1, 2011); see *Marut*, 34 Ill. 2d at 128; *Ford*, 398 Ill. App. 3d at 648. Therefore, we conclude that the circuit court did not abuse its discretion in admitting the postaccident vehicular photographs without requiring expert testimony. *Dawdy*, 207 Ill. 2d at 177 (finding that an abuse of discretion occurs when no reasonable person would take the position adopted by the circuit court). Accordingly, we hold that the appellate court erred in reversing the circuit court's admission of the postaccident vehicular photographs.

¶ 48                              B. Motion for a New Trial

¶ 49 We next consider defendant's argument that the appellate court erred in reversing the circuit court's denial of plaintiff's motion for a new trial. Defendant contends that it is clear that plaintiff was not entitled to a new trial on the issue of damages because plaintiff did not carry his burden on proximate cause and resulting injury as required by law. Defendant further contends that plaintiff's credibility and whether the alleged injuries were caused by this accident were the primary issues at trial. Defendant asserts that the jury was presented with two diametrically opposed versions of the facts and the jury chose not to believe plaintiff's version that the vehicles' impact caused him to sustain serious injuries.

¶ 50 On a motion for a new trial, a circuit court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 38. A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based upon any of the evidence. *Id.*; *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). The reviewing court will not reverse the circuit court's ruling on a motion for a new trial unless it is affirmatively shown that the circuit court abused its discretion. *Lawlor*, 2012 IL 112530, ¶ 38; *Maple*, 151 Ill. 2d at 455.

¶ 51    In determining whether the circuit court abused its discretion in denying the plaintiff's request for a new trial, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Maple*, 151 Ill. 2d at 455. In *Maple*, this court noted that it is important to keep in mind that the trial judge, in passing upon the motion for a new trial, has the benefit of his previous observations of the appearance of the witnesses, their manner in testifying, and of the circumstances aiding in the determination of credibility. *Id.* at 456. According to *Maple*, the question of whom to believe and what weight to be given all of the evidence is a decision for the trier of fact, whose determinations should not be upset on review unless manifestly erroneous. *Id.* at 460.

¶ 52    Defendant contends that the jury's verdict was not against the manifest weight of the evidence and the appellate court erred in reversing the determination of the jury and the circuit court. According to defendant, the jury's verdict was supported by ample evidence including (1) the equivocal testimony of plaintiff's expert that some other event could have caused plaintiff's injuries,[1] (2) the contradictory testimony of plaintiff, and (3) the photographic evidence showing minor damage to the parties' vehicles. Defendant argues that the appellate court usurped the fundamental right of a jury to decide the credibility of witnesses and the right of a jury to decline to accept injury claims when they are based largely upon plaintiff's subjective complaints.

¶ 53    In an automobile negligence case, the burden is on the plaintiff to establish a negligence cause of action. The plaintiff must prove that the defendant was negligent and that the defendant's negligence was a direct and proximate cause of an injury sustained by the plaintiff. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 294 (2000); *Hamilton v. Hastings*, 2014 IL App (4th) 131021, ¶ 35. The issue of whether an automobile accident has proximately caused any injury is uniquely a question of fact for the jury to decide. *Redmond v. Socha*, 216 Ill. 2d 622, 644-45 (2005); *Maple*, 151 Ill. 2d at 460. Jurors, through their own common sense and life experience, are well equipped to weigh the evidence and reach a conclusion that an automobile accident either did or did not cause an injury. *Snover v. McGraw*, 172 Ill. 2d 438, 448-49 (1996); *Marut*, 34 Ill. 2d at 128; *Palmer v. Craig*, 246 Ill. App. 3d 323, 329 (1993); *Phillips*, 87 Ill. App. 2d at 63. Where the circuit court, after presiding over a jury trial and having the opportunity to observe the trial witnesses, exercises its discretion and finds that there was sufficient evidence to support the verdict, it would constitute an abuse of discretion to grant a new trial. *Maple*, 151 Ill. 2d at 455-56.

¶ 54    Further, a jury is not required to accept the testimony of plaintiff's expert where the testimony conflicts with defendant's testimony as to the nature of the impact. *Id.* at 460; *Gaines*, 244 Ill. App. 3d at 575. Whether an opinion should be accepted is not for the trial judge but is for the finder of fact. *Melecosky v. McCarthy Brothers Co.*, 115 Ill. 2d 209, 216 (1986). Also, the fact that an expert's opinion is based upon information received from an interested litigant is relevant only to the weight it should be given. *J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.*, 108 Ill. 2d 106, 117 (1985).

¶ 55    A doctor's reliance on his patient's credibility and his acceptance of the patient's history and subjective expressions of pain, for purposes of making a medical diagnosis and rendering

---

[1] Asked on cross-examination if some other event might have caused plaintiff's injuries, Dr. Templer testified, "I'm sure a lot of things could have happened," but that he did not know of any other event.

- 11 -

medical treatment, is not binding on a jury. *Melecosky*, 115 Ill. 2d at 216-17. The jury is empowered to make credibility determinations and must make its own assessment of the patient's veracity, not merely with respect to that person's in-court testimony but also with respect to that person's general credibility to the extent that person's credibility is relevant to the ultimate determination in the case. *Maple*, 151 Ill. 2d at 460; *Melecosky*, 115 Ill. 2d at 216-17 (stating that the jury must decide the weight to be given the opinion of the medical expert that is based upon the patient's subjective statements to the expert); *Moran*, 297 Ill. App. 3d at 354; *Aguinaga v. City of Chicago*, 243 Ill. App. 3d 552, 562 (1993) (finding that the expert's testimony is but the opinion of the witness given on facts assumed to be true; it is the function of the trier of fact to determine the facts (citing *Beloit Foundry v. Industrial Comm'n*, 62 Ill. 2d 535, 539 (1972))). Additionally, a defendant is not required to present medical testimony to contradict or discredit the testimony of plaintiff or plaintiff's witnesses. See *Redmond*, 216 Ill. 2d at 644; *Pecaro v. Baer*, 406 Ill. App. 3d 915, 920-22 (2010). Thus, if the jury finds the plaintiff to be incredible, it can correspondingly disregard the opinions of the medical professional that are based upon information supplied to the professional by the plaintiff. *Moran*, 297 Ill. App. 3d at 353.

¶ 56    In the case at bar, the jury was instructed to determine whether plaintiff was injured and whether plaintiff's injuries were proximately caused by defendant's negligence. Significant questions arose at trial regarding these issues. The "constitution does, and judges should, carefully preserve the right of the parties to have a substantial factual dispute resolved by the jury, for it is here that assessment of the credibility of witnesses may well prove decisive." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 504 (1967); Ill. Const. 1970, art. I, § 13.

¶ 57    After a careful review of the evidence adduced at trial, as set forth above, we cannot conclude that the jury's findings were unreasonable, arbitrary, and not based upon the evidence. The inference that plaintiff did not actually suffer any injury due to defendant's negligence is one that could reasonably be drawn from the evidence. The jury heard testimony that (1) defendant's vehicle came to a complete stop and rolled at idle speed into the rear of plaintiff's vehicle, (2) plaintiff's vehicle was driveable after the accident, and (3) plaintiff drove his vehicle to his girlfriend's house immediately after the accident. They also heard the subjective nature of plaintiff's injuries and that six years later he still had neck pain. Dr. Templer testified that the accident caused whiplash and could have caused other cervical issues. Referring to plaintiff's MRI, Dr. Templer testified that there were acute findings of a more recent nature and degenerative findings from the aging process. He further opined that the accident could have caused the injuries and, conversely, may not have caused the injuries. He also explained that he could not relate the speed or level of impact to plaintiff's injuries because he was not a mechanical engineer and that was not his expertise.

¶ 58    Moreover, the jury heard contradictory evidence from plaintiff when he described how the accident occurred and the speed of impact. He told his girlfriend he had been "plowed" into. He filled out a patient form for Dr. Templer estimating the speed of impact between 25 and 30 miles per hour. He informed the police officer that there was little damage to either vehicle. Both parties testified at trial to minor damage to their respective vehicles. Additionally, the postaccident vehicular photographs showing minor damage provided independent evidence that discredited plaintiff's version of events but corroborated defendant's testimony that there was low impact. Thus, the evidence was conflicting, and disputed questions of fact were presented. The question of whom to believe and what weight to be given all of the evidence

was a decision for the trier of fact, whose determination should not be upset on review unless manifestly erroneous. *Maple*, 151 Ill. 2d at 460.

¶ 59 Here, we find that although the appellate court acknowledged that the jury can disbelieve any testimony, at any time, even when uncontradicted, the court, nonetheless, substituted its judgment for that of the jury. The court entered its own judgment on the issues of proximate cause and existence of damages, leaving only the amount of damages, in excess of a minimum, to be considered by the jury on remand, in violation of *Maple*. 2017 IL App (5th) 160264, ¶ 21.

¶ 60 We determine that the jury could reasonably find that plaintiff's contradictory testimony caused credibility issues and, therefore, that plaintiff failed to carry his burden and prove the issues of proximate cause and damages. Thus, its finding was not manifestly erroneous.

¶ 61 This court has recognized that

" '[i]t is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. *** That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' " *Dowler v. New York, Chicago & St. Louis R.R. Co.*, 5 Ill. 2d 125, 130 (1955) (quoting *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35 (1944)).

¶ 62 Consequently, we conclude that the circuit court properly exercised its discretion when it denied plaintiff's motion for a new trial. Accordingly, we hold that the appellate court erred when it reversed the circuit court's denial of plaintiff's motion for a new trial.

¶ 63 As earlier noted, defendant argues, and plaintiff also concedes, that the appellate court essentially entered a judgment notwithstanding the verdict while applying an incorrect standard of review. However, since we have held that the circuit court did not abuse its discretion in denying plaintiff's motion for a new trial, resolution of this argument is not necessary to the disposition of this case.

¶ 64 Courts of review will not decide moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions. *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶ 41. Courts of review will also ordinarily not consider issues that are not essential to the disposition of the causes before them or where the results are not affected regardless of how the issues are decided. *Id.*; *Condon v. American Telephone & Telegraph Co.*, 136 Ill. 2d 95, 99 (1990). Thus, we need not and do not address this argument.

¶ 65                                     III. CONCLUSION

¶ 66 For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

¶ 67       Appellate court judgment reversed.

¶ 68       Circuit court judgment affirmed.