2020 IL App (1st) 191841-U

FIRST DIVISION
November 23, 2020

No. 1-19-1841

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| ADRIAN CRUZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 L 5950 |
| | ) | |
| THOMAS ODEA, | ) | The Honorable |
| | ) | Rena Marie Van Tine, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Walker and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:*   The trial court's exclusion of certain evidence at trial did not deprive defendant of a fair trial.

¶ 2    Defendant, Thomas Odea, appeals from the trial court's May 3, 2019, order entering judgment in favor of plaintiff, Adrian Cruz, and against defendant in the amount of $166,586, and the August 13, 2019, order denying defendant's motion for a new trial. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                              I. BACKGROUND

¶ 4     On July 10, 2015, plaintiff was driving northbound on Damen Avenue. Plaintiff came to a complete stop at a red light at the intersection of Damen Avenue and Wellington Avenue. Plaintiff had been stopped for three or four seconds when he looked in his rearview mirror and saw a white car, driven by defendant, approaching behind him at an estimated speed of 20-30 miles per hour. The white car did not stop, and it hit the rear of plaintiff's van. Defendant testified he had almost stopped at the time of the collision. The impact of the collision threw plaintiff forward and backward in his seat. The impact of the collision also pushed plaintiff's van forward about three feet, and the front of plaintiff's vehicle collided with the rear of the vehicle ahead of him. After the collision, plaintiff exited his vehicle and felt pain "down his low back." There was no visible damage to plaintiff's van although he later paid $1000 for repairs. The hood on defendant's car was pushed back, the bumper was loose, one headlight was broken, and the windshield was cracked. Defendant's air bag was deployed, and his car was leaking antifreeze.

¶ 5     Plaintiff complained of low back pain to the paramedics that arrived on the scene of the accident. He was taken by ambulance to the emergency room at Illinois Masonic Hospital. At the hospital, doctors took X-rays of plaintiff and gave him medicine for the pain. Plaintiff was discharged from the hospital that same day, but he did not return to work that week because of his back pain.

¶ 6     Plaintiff sought treatment from Dr. Neema Bayran, a board-certified pain management physician at The Pain Center of Illinois, because he continued to experience pain in his lower back and tingling in his lower legs. Dr. Bayran referred plaintiff to physical therapy and prescribed him pain medication. Plaintiff also underwent several pain management procedures, including two medial branch block injections and a radiofrequency ablation. Although plaintiff initially reported

improvement in his symptoms, he began complaining of increased pain after he returned to work. Dr. Bayran subsequently referred plaintiff to the Illinois Back and Neck Institute for a spinal consultation. After the consultation, Dr. Bayran performed another radiofrequency ablation on plaintiff.

¶ 7    Plaintiff filed suit, alleging that defendant "carelessly and negligently operated his vehicle such that he struck [p]laintiff's vehicle" causing physical injury and mental anguish to plaintiff. Plaintiff also alleged that he suffered financial losses from medical treatment for his injuries, the damage to his vehicle, and his inability to pursue his business and affairs as usual.

¶ 8    Prior to trial, plaintiff filed three motions *in limine* that are relevant to this appeal. First, plaintiff moved to exclude post-accident photographs of plaintiff's vehicle. Second, plaintiff moved to exclude a prior complaint of back pain found in plaintiff's medical history. Finally, plaintiff moved to exclude two medical insurance claim forms that were sent from plaintiff's doctor to plaintiff's lawyer. The trial court granted each of these motions.

¶ 9    At trial, Dr. Bayran testified that he believed plaintiff's pain was caused by the accident, and that he believed the treatment plaintiff received for his pain was reasonable and necessary. Defendant presented testimony from two experts, Dr. Joseph Belmonte, and Barbara King, to dispute Dr. Bayran's testimony. Dr. Belmonte, a board-certified pain management physician, testified that although he agreed with the initial course of plaintiff's testing and treatment, he disagreed with Dr. Bayran's ultimate diagnosis and did not believe the injections were necessary. King, a medical billing expert, testified that the cost of plaintiff's treatment was more than what was reasonable and necessary. Both plaintiff and defendant also testified at trial regarding the accident.

¶ 10    The jury returned a verdict in favor of plaintiff and against defendant. The jury awarded plaintiff damages in the amount of $166,586.

¶ 11    Defendant filed a motion for a new trial, arguing that the trial court improperly excluded three pieces of evidence and thus deprived the defendant of a fair trial. The trial court denied the motion. Defendant timely filed this appeal.

¶ 12                                      II. ANALYSIS

¶ 13    On appeal, defendant challenges the trial court's denial of his motion for a new trial on the basis that the trial court improperly excluded evidence and thus deprived him of a fair trial. Defendant argues that he should have been allowed to introduce evidence of the post-accident photographs of plaintiff's vehicle, plaintiff's medical history of back pain, and the medical insurance claim forms at trial.

¶ 14    On a motion for a new trial, the trial court reviews the evidence "and determines if the jury's verdict is contrary to the manifest weight of the evidence." *DiFranco v. Kusar*, 2017 IL App (1st) 160533, ¶ 21. We review the trial court's ruling on a motion for a new trial for abuse of discretion. *Id.* "In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial." *Id.* (quoting *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992)).

¶ 15    The trial court has discretion to determine whether evidence is relevant and admissible. *Peach v. McGovern*, 2019 IL 123156, ¶ 25. The "reviewing court will not disturb the circuit court's decision absent a clear abuse of that discretion." *Id.* The abuse of discretion standard is "highly deferential" to the trial court. *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23. Abuse of discretion will be found only where the decision of the trial court is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Id.*

4

¶ 16    Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). "[R]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Peach*, 2019 IL 123156, ¶ 30 (citing *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 57 (2000)). "All relevant evidence is admissible, except as otherwise provided by law." Ill. R. Evid. 402 (eff. Jan. 1, 2011). "Relevant evidence may, nevertheless, be excluded if it is unfairly prejudicial or has the potential to mislead the jury." *Swift v. Schleicher*, 2017 IL App (2d) 170218, ¶ 78 (citing *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 97 (2008); Ill. R. Evid. 403 (eff. Jan. 1, 2011)).

¶ 17                                A. Post-Accident Photographs

¶ 18    Defendant argues that trial court abused its discretion in excluding the post-accident photos of plaintiff's vehicle from evidence because such photos are relevant and admissible under *Peach v. McGovern*, 2019 IL 123156. Plaintiff argues that the photos were properly excluded because defendant failed to show that the photos of plaintiff's vehicle would be relevant to determining any issue in dispute.

¶ 19    "In general, photographic evidence is admissible if it has a reasonable tendency to prove or disprove a material fact at issue in the case but may be excluded when irrelevant or immaterial or if its prejudicial nature outweighs its probative value." *Peach*, 2019 IL 123156, ¶ 27 (citing *Johnson v. Bailey*, 2012 IL App (3d) 110016, ¶ 13). Post-accident photos are generally relevant to issues of proximate cause and injury. *Id.* ¶ 38. Parties may also use post-accident photos to argue inferences from testimony about the nature of the impact from a collision. *Id.* Thus, the trial court may determine that post-accident vehicular photographs are admissible where they make

the injury to the plaintiff more or less probable and where they are relevant to impeachment. *Id.* There is no rigid rule that post-accident vehicular photographs are always admissible, nor is expert testimony always required for such photographs to be admitted. *Id.* ¶ 34. Where, as here, expert testimony is not offered to admit the post-accident photos, "the essential question in deciding the admissibility of postaccident photographs is whether the jury understands the evidence and can relate the vehicular damage depicted in the pictures to the injury without the aid of an expert." *Id.* ¶ 40.

¶ 20    Here, the trial court ruled that the post-accident photos of plaintiff's vehicle should be excluded from the evidence at trial because (1) the photos were of limited relevancy since the damage to the parties' vehicles was not in dispute, (2) the probative value was outweighed by the potential for unfair prejudice to plaintiff because there were no post-accident photos of defendant's vehicle, and (3) the jury could not relate the damage shown in the photo to plaintiff's injury without the aid of an expert. The trial court distinguished the facts of this case from those in *Peach*, stating that here neither party disputed the damage to the vehicles involved, and in this case photos of both parties' vehicles were not available to the jury. We agree with defendant that the trial court abused its discretion in excluding the photos of plaintiff's vehicle from evidence.

¶ 21    In *Peach*, the post-accident photos of the parties' vehicles were introduced as evidence as to whether plaintiff actually sustained the injuries claimed, given that there was only minor damage to the vehicles involved. *Id.* ¶ 40. Our supreme court held that the photos were admissible because they were relevant to proving the existence and extent of the plaintiff's injuries, and for the jury to determine the credibility of witnesses. *Id.* ¶ 47. The court ruled that "[i]f a jury is allowed to consider relevant testimony about vehicle speed and impact forces, a jury should be permitted to consider photographs that depict the damage, or lack thereof, done to the vehicles." *Id.* at ¶ 39.

¶ 22    In this case, although the property damage to the vehicles was not in dispute, the type of injury suffered by the plaintiff and the treatment that the injury required were disputed by the parties. The photos were relevant because they could have made testimony regarding the nature of the impact on plaintiff's vehicle and the type and extent of the injury to plaintiff more or less probable. Plaintiff testified that defendant hit his vehicle at a speed of 20 to 30 miles per hour, whereas defendant testified that he had braked and was slowing from that speed at the time of the impact. Pursuant to *Peach*, because the jury was allowed to hear this testimony, the jury should have also been allowed to view the photos of plaintiff's vehicle. The photos of plaintiff's vehicle could have corroborated the testimony regarding the nature of the impact and the collision. Thus, these photos were relevant to matters at issue. Furthermore, because the photos would also be relevant to determining the credibility of the witnesses, that evidence would not have been cumulative.

¶ 23    The trial court also ruled that the post-accident photos of plaintiff's vehicle should be excluded because their relevancy outweighed the danger of unfair prejudice they posed to the plaintiff. But the fact that the photos of the minimal damage to plaintiff's vehicle did not also show the more significant damage to defendant's vehicle is not unfair prejudice; it is simply showcasing one fact of many. In its ruling, the court did not state that the photos of plaintiff's vehicle were inaccurate or inflammatory. The court did not state that the photos of plaintiff's vehicle were misleading as to the actual state of plaintiff's vehicle after the accident. The fact that one photo did not show all the physical evidence in this case does not make it unfairly prejudicial. All evidence offered at trial is prejudicial in that it is meant to support or undermine some element of the case. *People v. Zimmerman*, 2018 IL App (4th) 170695, ¶ 120. Our Rules of Evidence are meant to protect against *unfair* prejudice. An otherwise accurate post-accident photo of a party's

vehicle is not unfairly prejudicial simply because it does not also show the damage to the other party's vehicle or because there are no photographs depicting the damage or lack of damage to the other vehicle.

¶ 24 Finally, we disagree with the trial court's reasoning that because the photo of plaintiff's vehicle showed minimal damage, expert testimony was needed to introduce the post-accident photo of plaintiff's vehicle. In *Peach*, our supreme court held that the post-accident photos could be admitted without the aid of expert testimony because the proportionality of force and injury is a concept within the realm of everyday knowledge. *Id.* ¶ 46. The court explained,

> "Witness testimony about the speed of the vehicles, the force of impact, and the existence or extent of any resulting injuries in an automobile accident does not necessarily require scientific, technical, or other specialized knowledge in order for the trier of fact to understand the evidence and determine a fact in issue. [Citation.]
>
> Juries are entitled to infer that which resides squarely in the center of everyday knowledge, the certainty of proportion, and the resulting recognition that slight force most often results in slight injury and great force most often is accompanied by great injury. [Citation.]" *Id.* ¶¶ 45-46.

In addition, as the *Peach* court noted, nothing would prevent the plaintiff from offering expert testimony to explain the "absence of proportionality between the force of the impact and the cause and severity of the resulting injuries" to plaintiff. *Id.* at ¶ 46. The plaintiff would not be prevented, and in this case was not prevented, from discussing the more extensive damage to defendant's vehicle. These proofs would relate to the weight the jury should assign to the photos, not to whether the photos are admissible.

¶ 25    We therefore find that the trial court abused its discretion in excluding the post-accident photos of plaintiff's vehicle because they were relevant, not unfairly prejudicial, and did not require expert testimony for their admission.

¶ 26                           B. Pre-Accident Pain History

¶ 27    Defendant argues that the trial court abused its discretion in excluding from evidence a pre-accident complaint of back pain in plaintiff's medical history. Plaintiff responds that the trial court properly excluded this evidence because defendant failed to show with specificity how this prior complaint was relevant to the plaintiff's injury under *Voykin v. Estate of Deboer*, 192 Ill. 2d. 49 (2000). We agree with plaintiff.

¶ 28    Evidence of a prior injury may be relevant to negate causation, negate or reduce damages, or as impeachment. *Id.* at 57. Generally, "if a defendant wishes to introduce evidence that the plaintiff has suffered a prior injury, whether to the 'same part of the body' or not, the defendant must introduce expert evidence demonstrating why the prior injury is relevant to causation, damages, or some other issue of consequence. *Id.* at 59. The trial court may admit evidence of a prior injury if it determines, in its discretion, that a lay person can readily appraise the relationship of that injury to the current injury without expert testimony. *Id.*

¶ 29    At trial, defendant sought to introduce a note from plaintiff's medical history, taken by Dr. Bayran at plaintiff's initial consultation, that plaintiff had previously experienced soreness in his back, that his pain was very minimal at the time of the collision, and that he had never before received any type of treatment for his back. This note was also reviewed by Dr. Belmonte, who stated in his deposition that the patient history lacked details regarding the "location, type, severity, or onset" of the previous pain. Neither Dr. Bayran nor Dr. Belmonte testified as to how this history impacted their evaluation of plaintiff's post-accident condition and treatment. The trial court ruled

that defendant could not introduce this evidence at trial because he did not offer any evidence regarding the specifics of the prior injury, expert medical testimony relating the two injuries, or any evidence that either doctor in the case relied on evidence of the prior injury in giving their medical opinions.

¶ 30    We find that the trial court did not abuse its discretion in excluding plaintiff's prior complaint of back pain from evidence. In *Voykin*, our supreme court held that without specific evidence of what the prior injury was, when plaintiff incurred the prior injury, or when the plaintiff last suffered from symptoms related to the prior injury, the average juror could not relate the prior injury to the plaintiff's current injury without the aid of an expert and thus the evidence of the prior injury should have been excluded from evidence. *Id.* at 60. As in *Voykin*, the defendant here failed to offer specific evidence to support a connection between the plaintiff's prior injury and his post-accident condition. Defendant presented no evidence to the court that plaintiff's prior complaint of back pain was in the same part of his back as the post-accident injury to his lower back. Defendant presented no evidence regarding when the prior injury to plaintiff's back occurred or when the plaintiff last suffered symptoms from it. Defendant presented no evidence regarding the treatment, if any, that plaintiff received for the prior back pain. Because defendant failed to show any specific evidence regarding the relationship between plaintiff's prior injury and post-accident injury, the trial court was within its discretion to determine that expert testimony was required to relate these injuries to the jury. Defendant essentially argues that the trial court erred because it did not apply its discretion to allow such testimony without the aid of an expert in defendant's favor. We disagree.

¶ 31    Defendant cites *Felber v. London*, 346 Ill. App. 3d 188 (2004), in arguing that evidence of a plaintiff's prior injury to the same part of the body should be admitted without expert testimony.

10

*Felber* is distinguishable from both *Voykin* and the case at bar. In *Felber*, we found that the usual need for expert testimony under *Voykin* was obviated by the testimony of both the plaintiff and the plaintiff's treating doctor, who specifically discussed the extent of the plaintiff's prior injury, the treatment he rendered for it, and his opinion of plaintiff's condition before and after the collision. *Id.* at 193. Similar testimony was not available in this case from Dr. Bayran, the plaintiff's treating doctor. Therefore, we find that the *Felber* ruling is not applicable to this case.

¶ 32    Finally, defendant argues that he was prejudiced by the trial court overruling defendant's objection to the plaintiff being referred to as "able-bodied" in plaintiff's closing statement. We disagree. "Attorneys are afforded wide latitude during closing argument and may comment and argue on the evidence and any inference that may be fairly drawn from that evidence." *Zickuhr v. Ericsson, Inc.*, 2011 IL App (1st) 103430, ¶ 72. In closing, plaintiff's counsel argued that "Up to [the accident], [plaintiff] was an able-bodied 28-year-old, able to do heavy construction work." Upon defendant's objection to the characterization of the plaintiff as "able-bodied," the trial court instructed the jury that the statements made by counsel during argument were not evidence, and that the jury should disregard any statements not supported by the evidence. The statement that plaintiff was able to do heavy construction work prior to the accident was supported by plaintiff's testimony at trial and was not contradicted by other evidence. Furthermore, the trial court's instruction to the jury cured any prejudice to defendant that resulted from counsel's single "able-bodied" comment. See *Lagoni v. Holiday Inn Midway*, 262 Ill. App. 3d 1020, 1035 (1994) (holding that defendant was not prejudiced by statements made during closing argument where the "misstatement comprised only a small segment of defense counsel's closing argument and was accompanied by the trial court's admonition that arguments of counsel do not constitute evidence.").

¶ 33                     C. Health Insurance Claim Forms

¶ 34    Finally, defendant argues that because certain health insurance claim forms were sent directly from the plaintiff's healthcare provider to plaintiff's lawyer, they are relevant to show the bias of plaintiff's treating doctor. Defendant thus argues that the trial court abused its discretion in excluding these documents from evidence. We disagree.

¶ 35    A party has "the same ability to cross-examine a treating physician that he would have in cross-examining a retained expert." *Kim v. Evanston Hospital*, 240 Ill. App. 3d 881, 890 (1992). Generally, a party is given "the widest latitude to demonstrate any interest or bias of an expert through cross-examination." *Id.* Medical experts may be properly cross-examined "regarding fee arrangements, prior testimony for the same party, and financial interest in the outcome of the case." *Id.* Similarly, "[a] defendant may cross-examine the witnesses put on by plaintiff to demonstrate that the expenses claimed by the plaintiff are excessive." *Nicholl v. Scaletta*, 104 Ill. App. 3d 642, 649 (1982). "Limitation of cross-examination of a medical expert rests within the sound discretion of the trial judge." *Sears v. Rutishauser*, 102 Ill. 2d 402, 407–08 (1984). "[S]ubtrials on issues remote from the subject of the lawsuit should be avoided." *Id.* at 407.

¶ 36    Defendant cites *Nicholl v. Scaletta*, 104 Ill. App. 3d. 642 (1982), to support his argument that these forms should have been admissible evidence. In *Nicholl*, this court considered whether the jury's award of damages in a personal injury action was inadequate or against the manifest weight of the evidence because it was less than the plaintiff's calculated damages. This court found that the evidence at trial suggested a conflict as to the accuracy of plaintiff's claimed medical expenses, and thus the trial court abused its discretion in finding the jury's award inadequate and ordering a new trial on the issue of damages. Of relevance here, we noted that evidence that the plaintiff's treating doctor sent his bills directly to the plaintiff's attorney instead of to the plaintiff,

12

"seemingly in anticipation of favorable litigation," may have been one factor the jury considered in determining the legitimacy of plaintiff's medical expenses. *Id.* at 649. This court did not discuss in *Nicholl* whether those bills were properly admitted as evidence.

¶ 37    We find that the trial court did not abuse its discretion in limiting defendant's cross-examination of Dr. Bayran on the issue of whether he sent health insurance claim forms directly to plaintiff's attorney. The trial court allowed the defendant wide latitude in cross-examining Dr. Bayran to expose any potential bias or financial interest he may have had in the case. Dr. Bayran was questioned on the fees he received in exchange for his testimony, his general fee arrangement in his work as an independent medical examiner, whether he had met with plaintiff's attorneys before, his ownership interest in the other entities involved in plaintiff's care, his experience with medical billing, and the amounts he billed to plaintiff in this case. In addition, Dr. Bayran was questioned on the propriety of plaintiff's diagnosis and treatment plan. At trial, Dr. Bayran testified that he only remembered one meeting with plaintiff's attorneys prior to the trial, which occurred just before his evidence deposition. Defendant failed to elicit any testimony of a referral system or other connection or relationship between plaintiff's doctor and his attorneys. And unlike in *Nicholl*, defendant failed to elicit any testimony from plaintiff or his doctor that suggested plaintiff's treatment was fabricated or unwarranted.

¶ 38    The trial court noted in excluding this evidence that the defendant failed to make an offer of proof demonstrating the relevance of the claim form being sent to plaintiff's attorney. When asked about the need to introduce these documents, defendant's counsel stated generally that the evidence "could show a motive or interest in the testimony [of Dr. Bayran]." As discussed, Dr. Bayran's potential bias had been widely explored by defendant on cross-examination. Because defendant could not offer further specifics as to how this form would demonstrate the bias of Dr.

Bayran, the trial court limited the continued exploration of Dr. Bayran's bias through this more remote avenue. We find that the trial court's exclusion of the health insurance claim forms from evidence was not arbitrary or unreasonable. Accordingly, we find that the trial court did not abuse its discretion in excluding the health insurance claim forms from evidence.

¶ 39                                D. Motion for a New Trial

¶ 40    Finally, defendant argues that the claimed trial court's errors in excluding evidence substantially prejudiced defendant and prevented him from obtaining a fair trial. Because we find error only in the exclusion of post-accident photos of plaintiff's vehicle from evidence, we disagree that this error resulted in substantial prejudice to defendant or that a new trial is warranted.

¶ 41    "[A] party is not entitled to a new trial unless a trial court's erroneous evidentiary ruling was substantially prejudicial and affected the outcome of the trial. [Citation.] The burden of establishing prejudice and showing that the trial court's error affected the outcome of the trial is on the party seeking reversal." *DiCosolo v. Janssen Pharmaceuticals, Inc.*, 2011 IL App (1st) 093562, ¶ 40.

¶ 42    Defendant has not shown that the trial court's exclusion of the post-accident photos of plaintiff's vehicle was substantially prejudicial. Although the admission of the post-accident photos of plaintiff's vehicle may have made the issue of the nature and extent of plaintiff's injury more or less probable, it would not have affected the outcome of the trial because evidence of the condition of plaintiff's van was still presented to the jury. Both plaintiff and defendant testified that there was no visible damage to plaintiff's vehicle after the accident. That plaintiff's vehicle suffered minimal damage was not disputed at any time. The jury also heard undisputed evidence of the extent of damage to defendant's car which could reasonably be viewed as indicative of the accident being something more than a mere fender bender. Because the jury received the evidence

of the post-accident condition of plaintiff's and defendant's vehicles, evidence that was basically undisputed, the exclusion of the photos did not substantially prejudice defendant and deprive him of a fair trial. Defendant does not argue that the jury's verdict is against the manifest weight of the evidence. We therefore find that the defendant is not entitled to a new trial.

¶ 43                                    III. CONCLUSION

¶ 44    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 45    Affirmed.