NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 200207-U

NO. 4-20-0207

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 19, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| KATHERINE MOORE, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| KAYLA E.L. HALLER, | ) | No. 17L271 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Adam Giganti, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1  *Held*:  Trial court judgment is affirmed as plaintiff forfeited every issue she raised on appeal.

¶ 2  On January 22, 2020, a jury returned a verdict in favor of plaintiff, Katherine Moore, in the amount of $9102.  Plaintiff appeals, raising the following issues: (1) the trial court erred by denying plaintiff's motion to bar evidence of a pre-existing condition; (2) the court erred when it barred plaintiff from introducing medical bills from certain medical providers; and (3) the jury's award is against the manifest weight of the evidence presented.  Plaintiff asks for a new trial on her damages.  We affirm.

¶ 3  I. BACKGROUND

¶ 4  On December 6, 2017, plaintiff filed her complaint against defendant, Kayla E.L. Haller, after a December 21, 2015, automobile accident.  Plaintiff alleged she was injured as a

direct and proximate result of defendant's negligence. Defendant's car rear-ended plaintiff's car—while plaintiff was stopped in traffic—with enough force to break plaintiff's seat and total both vehicles.

¶ 5    Prior to trial, Dr. Matthew Link, a chiropractor who treated plaintiff, sat for an evidence deposition. During the deposition, Dr. Link was questioned about plaintiff's chiropractic treatment for back issues prior to the accident in this case. On December 19, 2019, plaintiff filed a motion to bar evidence of her prior back injuries and treatment she received for those injuries. On January 14, 2020, the trial court denied plaintiff's motion to bar this evidence.

¶ 6    The jury trial in this case began on January 21, 2020. Plaintiff called defendant as an adverse witness. Defendant testified she collided with plaintiff's vehicle "pretty hard" from behind. Defendant's car was totaled in the accident. After the accident, plaintiff told defendant she was okay but her neck hurt.

¶ 7    Plaintiff, 31, testified she worked as a sign language teacher at Jacksonville High School and was an adjunct professor for sign language at Richland Community College. Plaintiff was the only occupant of her vehicle at the time of the accident. Her car was totaled, and her head hurt badly after the accident. Her husband took her to Prompt Care where she told the medical providers she had been in a car accident and had a headache. Prompt Care told her she should go to the emergency room, which she did. When she left the emergency room that night, she still had a headache.

¶ 8    Plaintiff went to the Walton Clinic on December 23, 2015, because she was having low-back pain. She stated she first went to the Walton Clinic in 2012 or 2013 for lower back pain during a pregnancy. The treatment helped, and she discontinued treatment. After her daughter's birth, she lost weight and felt better. She went back to the Walton Clinic in 2014

because of back pain during another pregnancy. Again, she stopped the treatment after she delivered her baby. She sought no other chiropractic care or physical therapy for her back until after the accident at issue.

¶ 9 Plaintiff testified she felt good and lived an active life before the accident. She enjoyed horseback riding before her accident. Following the accident, between December 2015 and October 2017, she started having bad back pain after teaching all day. Some days, plaintiff could not even lift her one-year-old daughter. She was unable to do much housework after the accident, but this had improved as long as she took breaks. The neck pain and headaches she suffered following the accident resolved fairly quickly.

¶ 10 In addition to chiropractic care, plaintiff was also prescribed medicine, although it did not provide much relief. The chiropractic treatment provided relief on the day of treatment, but her pain would return the next day. She stopped going to the Walton Clinic because it was not providing the relief she wanted. On her own, without a medical referral, plaintiff went to the Orthopedic Center of Illinois in August 2016. She took part in physical therapy at the Orthopedic Center, but it did not help. Plaintiff then began receiving steroidal injections in her lower back. The injections worked well, but the effects would wear off. She did not plan on getting more treatment for her back unless her condition worsened. At the time of trial, she testified she was doing pretty well with only mild back pain.

¶ 11 When plaintiff's counsel attempted to question plaintiff about a list of dates and charges for different medical providers (plaintiff's exhibit No. 1), defense counsel objected, arguing plaintiff could not lay a proper foundation for most of the charges. The trial court agreed, stating plaintiff's physician needed to be present "to testify to what you're trying to introduce into evidence." Defense counsel did stipulate certain medical bills could be admitted

into evidence, including a $135 bill from Prompt Care, a $937 bill from St. John's Hospital emergency room, a $605 emergency room physician's bill, and bills for Dr. Link's chiropractic treatment from December 23, 2015, to August 16, 2016, totaling $6425.

¶ 12       On cross-examination, defense counsel asked plaintiff about her pre-accident treatment. Plaintiff testified she started treatment at the Walton Clinic on April 29, 2013, complaining she suffered low-back pain 26 to 50 percent of the time. She did not remember when she told Dr. Walton her back problems had started. She did tell Dr. Walton her pain, which was severe at times, might be related to her gaining weight during her pregnancy. After she delivered her child, she decided to end treatment on her own because her back pain had improved. She saw Dr. Walton again in October 2014 for low-back pain, which she rated as a 7 on a scale of 1 to 10. She saw Dr. Walton 38 times between October and December 2014. She again ended this course of treatment on her own.

¶ 13       Plaintiff testified she did not have back pain when she went to Prompt Care an hour after the accident or when Prompt Care directed her to go to the emergency room. She did have a headache and complained of neck pain at the emergency room. Ten days after the accident, plaintiff returned to Prompt Care and still made no complaints regarding back pain. A month after the accident, plaintiff went to the emergency room but did not complain of low-back pain.

¶ 14       Plaintiff testified she could not recall whether the condition of her back after she saw Dr. Link for the last time was better than the condition of her back before the accident. This was the last thing the jury heard directly from plaintiff. Most of the medical charges plaintiff was not allowed to admit as evidence were for care she received after she stopped seeing Dr. Link.

- 4 -

¶ 15    Dr. Link's evidence deposition was then read into evidence. During the deposition, plaintiff made a continuing objection to evidence of plaintiff's pre-accident injuries and treatment based on a lack of both relevance and foundation. Dr. Link testified plaintiff received two courses of chiropractic treatment at the Walton Clinic from Dr. Adrian Walton. The first course of treatment began on April 23, 2013, for lower back issues she was suffering between 26 to 50 percent of the time. Plaintiff could not recall when her back problems began. She thought her issues might have been attributable to weight she gained during pregnancy. Dr. Walton diagnosed her with lumbar subluxation.

¶ 16    According to Dr. Link, plaintiff's next course of chiropractic treatment began on October 13, 2014. She had complaints of lower back pain (7 out of 10) and neck discomfort (4 out of 10). Dr. Walton diagnosed plaintiff with lumbar subluxation, cervical spine subluxation, and myalgia. Dr. Link estimated plaintiff was seen at the Walton Clinic 15 to 20 times between October 13 to December 3, 2014. On November 17, 2014, plaintiff's lower back pain had decreased to 4 out of 10. On November 24, 2014, she rated her "mid-back pain" as a 5 out of 10. On December 3, 2014, plaintiff indicated she was having aching "mid-back" pain 30 percent of the time. Dr. Walton recommended plaintiff continue receiving treatments, but she did not return until December 23, 2015, two days after the accident.

¶ 17    Plaintiff complained of lower back and neck pain as a direct result of the collision. Dr. Link testified plaintiff received treatment from him similar to what she received from Dr. Walton. Over time, her pain decreased with treatment. On August 16, 2016, at plaintiff's last treatment with Dr. Link, plaintiff rated her pain as follows: headaches—0; neck pain—1; and lower back pain—3. Pursuant to plaintiff's self-evaluated pain ratings, she had less pain at the end of her third course of treatment than at the end of her first and second courses of

treatment. As of August 16, 2016, Dr. Link still recommended plaintiff to continue treatment twice per week. However, she did not return.

¶ 18       Dr. Link testified, regardless of the accident at issue here, he would have recommended plaintiff receive chiropractic care because he believed she probably would have required it. However, he indicated plaintiff might have determined she did not need further chiropractic treatment absent the accident. Dr. Link testified the accident was a new injury, causing damage to plaintiff's body and accelerating the need for her to have more chiropractic care. He believed she returned for treatment because of conditions caused by the accident. However, Dr. Link agreed plaintiff's pre-accident back problems played a role in plaintiff's post-accident condition.

¶ 19       On January 22, 2020, the jury returned a verdict for plaintiff and assessed damages in the sum of $9102 ($1000 for pain and suffering and $8102 for necessary medical care, treatment, and services received). The jury's damage award was subject to a $10,000 offset for expenses already paid by defendant's insurer.

¶ 20       On January 30, 2020, plaintiff filed a posttrial motion pursuant to section 2-1202 of the Code of Civil Procedure (735 ILCS 5/2-1202 (West 2018)). According to the motion, the trial court erred by allowing Dr. Link's testimony regarding plaintiff's prior back injuries and prior chiropractic treatment for those injuries. Plaintiff also argued the trial court erred by not allowing plaintiff to introduce all of the medical bills she incurred after the collision. Finally, plaintiff argued the jury's award for damages was against the manifest weight of the evidence.

¶ 21       On April 14, 2020, the trial court denied plaintiff's posttrial motion. This appeal followed.

¶ 22                          II. ANALYSIS

¶ 23       As previously stated, plaintiff raised three issues on appeal. However, plaintiff's brief contains no real analysis on any of the issues. Instead, she mostly provided extended quotations from cases—when she cited cases—and the record without explaining how the law and facts support her claims of error.

¶ 24       Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) states an appellant's brief shall include:

> "Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Citation of numerous authorities in support of the same point is not favored. Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."

This court has stated "mere contentions, without argument or citation of authority, do not merit consideration on appeal." *People v. Hood*, 210 Ill. App. 3d 743, 746, 569 N.E.2d 228, 230 (1991). "Contentions supported by some argument but by absolutely no authority do not meet the requirements of Supreme Court Rule 341(e)(7)," now Rule 341(h)(7). *Hood*, 210 Ill. App. 3d at 746, 569 N.E.2d at 230. An appellant must present clearly defined issues and cite pertinent authority. This court "is not simply a depository into which the appealing party may dump the burden of argument and research." *Hood*, 210 Ill. App. 3d at 746, 569 N.E.2d at 230.

¶ 25       Because plaintiff failed to comply with these requirements, she forfeited all three issues she raised on appeal for the following reasons. First, she failed to cite any authority or provide any analysis supporting her argument the jury's damage award was against the manifest weight of the evidence. Instead, she simply stated, "Given the fact that this was a liability case, with a major impact which caused the Plaintiff to seek immediate care and treatment for years

after, and had continuing problems with her back up to the time of trial, a verdict of a little over $9,000.00 is contrary to the manifest weight of the evidence ***."

¶ 26 Second, plaintiff provided no authority or reasoning to support her assertion the trial court abused its discretion in not allowing her to introduce medical bills based on her testimony alone. Instead, her argument focused on her ability to testify as to the cause of her injuries.

¶ 27 Finally, with regard to plaintiff's assertion the trial court abused its discretion by allowing defendant to introduce evidence of plaintiff's pre-collision chiropractic treatment for a pre-existing back condition, plaintiff merely quotes extensively from both our supreme court's opinion in *Voykin v. Estate of Deboer*, 192 Ill. 2d 49, 733 N.E.2d 1275 (2000)—which we note is at least relevant to the issue raised on appeal—and the record in this case and draws summary conclusions with no supporting analysis. For example, she states: (1) "The injury which the Plaintiff suffered previously and complained of in this case are not such that a lay person can readily appraise the relationship, if any, between those injuries without expert assistance"; (2) "Defendant was unable to lay a sufficient foundation under [*Voykin*] to show that the prior successful treatments of over one year ago are relevant to causation, damages, or some other issue of consequence"; and (3) "Defendant failed to demonstrate why the prior injury is relevant to causation, damages, or some other issue of consequence as required."

¶ 28 Regardless of plaintiff's forfeiture of this final issue, the trial court did not abuse its discretion in allowing evidence of plaintiff's prior condition. Generally, we will not disturb a trial court's evidentiary ruling unless the trial court abused its discretion. *Felber v. London*, 346 Ill. App. 3d 188, 189, 803 N.E.2d 1103, 1104 (2004). "An abuse of discretion will be found only where no reasonable person would take the view adopted by the trial court." *Felber*, 346 Ill.

- 8 -

App. 3d at 189, 803 N.E.2d at 1104.

¶ 29    In *Voykin*, our supreme court rejected the "same part of the body rule," which essentially provided "if a plaintiff has previously suffered an injury to the same part of the body, then that previous injury is automatically relevant to the present injury simply because it affected the same part of the body." *Voykin*, 192 Ill. 2d at 57, 733 N.E.2d at 1279. However, the supreme court did not ban all evidence of prior injuries in all cases. The court noted a "prior injury may be relevant to establish that the plaintiff had a preexisting condition for which the defendant is not liable and that the defendant is liable only for the portion of the damages that aggravated or increased the plaintiff's injury." *Voykin*, 192 Ill. 2d at 58, 733 N.E.2d at 1280. A party who seeks to introduce evidence of a prior injury must show how the prior injury and current injury are related. The supreme court noted:

"In most cases, the connection between the parts of the body and past and current injuries is a subject that is beyond the ken of the average layperson. Because of this complexity, we do not believe that, in normal circumstances, a lay juror can effectively or accurately assess the relationship between a prior injury and a current injury without expert assistance. Consequently, we conclude that, if a defendant wishes to introduce evidence that the plaintiff has suffered a prior injury, whether to the 'same part of the body' or not, the defendant must introduce expert evidence demonstrating why the prior injury is relevant to causation, damages, or some other issue of consequence. This rule applies unless the trial court, in its discretion, determines that the nature of the prior and current injuries are such that a lay person can readily appraise the relationship, if any, between those injuries without expert assistance." *Voykin*, 192 Ill. 2d at 59, 733 N.E.2d at

1280.

In *Voykin*, the defendant introduced evidence the plaintiff had neck problems before the accident at issue in the case. *Voykin*, 192 Ill. 2d at 60, 733 N.E.2d at 1280-81. During closing arguments, the defendant argued the jury should find in his favor, in part, because the plaintiff had complained of neck pain before the automobile accident. *Voykin*, 192 Ill. 2d at 60, 733 N.E.2d at 1281.

¶ 30    Our supreme court found the trial court erred in allowing the defendant to introduce evidence of the plaintiff's neck problems before the accident. The court explained the defendant did not establish what the pre-accident neck injuries were, when the plaintiff suffered them, or when he last suffered them. *Voykin*, 192 Ill. 2d at 60, 733 N.E.2d at 1281. According to our high court, "Without expert testimony establishing both the nature of plaintiff's prior 'neck problems' as well as the relationship between those prior problems and plaintiff's current claim, an average juror could not readily appraise the effect of the prior problems upon plaintiff's current claim." *Voykin*, 192 Ill. 2d at 60, 733 N.E.2d at 1281.

¶ 31    The situation in the case *sub judice* is distinguishable from the situation in *Voykin*. In this case, defendant did not introduce evidence plaintiff had experienced back problems in the past without also providing information as to what plaintiff's back problems were, when she suffered them, and when she last sought treatment for those problems prior to the accident in this case. The facts in this case are closer to those in *Felber* rather than *Voykin*.

¶ 32    In *Felber*, the Second District rejected an argument the trial court erred in allowing the defendant in that case to introduce evidence of Felber's injuries preceding the February 20, 1999, automobile accident at issue in that case. *Felber*, 346 Ill. App. 3d at 189, 193, 803 N.E.2d at 1104, 1107. Felber sought to keep the defendant from presenting any

evidence regarding a 1997 car accident where Felber was injured. While prohibiting the defendant from introducing evidence regarding the prior accident, the trial court allowed the defendant to ask about Felber's medical condition from January 1, 1998, to the time of trial. *Felber*, 346 Ill. App. 3d at 190, 803 N.E.2d at 1105.

¶ 33    At trial, Felber testified she had gone to a chiropractor from February to September 1998 for shoulder and neck pain. *Felber*, 346 Ill. App. 3d at 190, 803 N.E.2d at 1105. She began treatment with Dr. Richard Feeley in November 1998. Her neck had improved by the end of 1998. However, she was still having some problems with it during the first six weeks of 1999. Two days before the accident at issue in the case, she saw Dr. Feeley and described her neck as " 'feeling pretty good.' " *Felber*, 346 Ill. App. 3d at 190, 803 N.E.2d at 1105.

¶ 34    When the February 1999 accident occurred, Felber was wearing a neck brace. After the accident, she went to the emergency room and had pain in her neck, her lower back, between her shoulder blades, and in the back of her head. She testified she had not experienced the back pain before the February 1999 accident. *Felber*, 346 Ill. App. 3d at 190, 803 N.E.2d at 1105. Felber saw Dr. Feeley two days after the accident, and he suggested she continue the treatment, including manipulation, acupuncture, and nutritional supplements, she was receiving before the accident. Dr. Feeley also prescribed muscle relaxants, more frequent visits, and, in April 1999, physical therapy. *Felber*, 346 Ill. App. 3d at 190, 803 N.E.2d at 1105.

¶ 35    Felber's testimony showed she had a history of problems with her neck. On cross-examination, she said she started seeing a chiropractor after she hurt her neck while backing her car out of a garage. She also stated she had neck pain two weeks after riding a roller coaster in August 1998. *Felber*, 346 Ill. App. 3d at 190, 803 N.E.2d at 1105. In October 1998, she began physical therapy for her neck and back, which included ultrasound and massage

therapy. Felber acknowledged the treatment she received from Dr. Feeley both before and after the accident was similar. Regardless of the accident at issue in the case, Felber anticipated she would have needed to continue her treatment. *Felber*, 346 Ill. App. 3d at 190-91, 803 N.E.2d at 1105-06.

¶ 36 Dr. Feeley testified Felber's condition had changed after the accident when he examined her on February 22, 1999. She had a " 'nonphysiological ligamentous strain of the upper neck,' " which Dr. Feeley had not seen absent trauma. The doctor said the strain was consistent with Felber's description of the accident. He opined "the injuries that he found on February 22, 1999, were 'directly causally related' to the collision." *Felber*, 346 Ill. App. 3d at 191, 803 N.E.2d at 1106. It was also his opinion Felber's complaints of numbness in her arms and hands were related to the collision. *Felber*, 346 Ill. App. 3d at 192, 803 N.E.2d at 1106. Further, "[h]er symptoms of neck pain, numbness in the arms, and shoulder pain were 'directly a continuation of relationship to the trauma' from the collision." *Felber*, 346 Ill. App. 3d at 192, 803 N.E.2d at 1106.

¶ 37 In rejecting Felber's argument the trial court erred in allowing the defendant to introduce evidence of the plaintiff's prior injuries at trial, the Second District stated:

> "Our review of the record leads us to conclude that the evidence in this case is
> such that the jurors could readily appraise the relationship between the injuries of
> which Felber complained after the collision and her preexisting injuries without
> additional expert assistance; thus, the trial court did not abuse its discretion in
> allowing [defendant] to introduce evidence of Felber's preexisting injuries.
> Unlike the evidence in *Voykin*, there was specific testimony, from both Felber and
> Dr. Feeley, regarding the extent of Felber's preexisting injuries and symptoms

- 12 -

and the treatments she received in the months, even days, before the collision. Both Felber and Dr. Feeley were specifically questioned about Felber's condition after the collision, and Dr. Feeley testified about the possible effects of the collision on Felber's preexisting condition. This is precisely the type of testimony that obviates the need for additional expert testimony. Unlike the evidence in *Voykin*, the nature of Felber's prior condition and its possible relationship to her current claim were clearly established. The jury was free to make its own determination, in light of both parties' description of the collision, whether the collision caused, or contributed to, Felber's current condition. We find no abuse of discretion in the trial court's admission of testimony regarding Felber's prior injuries." *Felber*, 346 Ill. App. 3d at 193, 803 N.E.2d at 1107.

¶ 38　　　　　As in *Felber*, the testimony of plaintiff and her doctor made the need for additional expert testimony unnecessary to link plaintiff's pre-accident and post-accident issues. Plaintiff had two prior courses of chiropractic treatment for back problems, and the treatment she received after the accident was similar to the treatment she received before. Dr. Link stated he would have recommended plaintiff continue receiving chiropractic care even if she had not been involved in the accident. Dr. Link did testify "the car accident was a new injury that caused damage to her body and accelerated the need for chiropractic care and very possibly may have, by causing more damage by being in an accident, weakened her body, requiring more chiropractic care." However, he also testified the problems plaintiff had with her back before the accident played a role in her condition after the accident. The jury was free to reach its own conclusions whether the accident caused or contributed to plaintiff's current condition. As a result, the trial court did not abuse its discretion in allowing this evidence.

¶ 39                                    III. CONCLUSION

¶ 40            For the reasons stated, we affirm the trial court's judgment in this case.

¶ 41            Affirmed.